**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** **PLAINTIFF**

**VS.** **CIVIL ACTION NO.: 1:25-CV-288-TBM-RPM**

**BOLLINGER SHIPYARDS, LLC** **DEFENDANT**

# DEFENDANT'S MOTION TO COMPEL DISCOVERY

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Bollinger Shipyards, LLC ("Bollinger" or "Defendant"), which respectfully moves this Court to compel Plaintiff to (1) produce medical records authorizations signed by Ms. Senseney that will permit undersigned counsel to obtain Ms. Senseney's medical records from each of the providers who have treated her since she was "prescribed an opioid and developed opioid dependency," as admitted in Plaintiff's Supplemental Response to Defendant's Interrogatory No. 11, and (2) identify the medical providers who have treated her during that timeframe. The reasons supporting this Motion are set forth in the accompanying Memorandum in Support, including that the information and records sought are relevant and proportional to the needs of the case, and that Ms. Senseney has waived any medical privilege regarding the requested information by permitting the EEOC to sue on her behalf for four separate claims of disability discrimination and claiming medical expenses and emotional distress damages on her behalf.

In addition to the accompanying memorandum, Bollinger offers the following in support:

Exhibit 1: Plaintiff's Initial Disclosures

Exhibit 2: February Email and Original Authorizations

Exhibit 3: Defendant's First Discovery Requests to Plaintiff and Revised Authorizations

Exhibit 4: Plaintiff's Discovery Responses

Exhibit 5: June and July Conferral Between Counsel Regarding Discovery Dispute

Exhibit 6: Plaintiff's Supplemental Discovery Responses

Exhibit 7: Plaintiff's Expert Disclosures and Report

Exhibit 8: Continued Conferrals Between Counsel Regarding Discovery Dispute

For all of the reasons explained in the accompanying Memorandum in Support, Bollinger requests an Order from this Court compelling Plaintiff to identify Ms. Senseney's medical providers for the requested time-period and to produce executed medical records authorizations for both psychotherapy and non-psychotherapy records for each of the providers identified. Defendant also respectfully requests that the Court award Defendant attorney's fees associated with filing this Motion, in accordance with Federal Rule of Civil Procedure 37(a)(5)(A).

THIS the 2nd day of October, 2026.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: */s/David M. Korn*
Mark Fijman MS Bar 99153
David M. Korn (*pro hac vice*)
Caroline E. Perlis (*pro hac vice*)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email: fijmanm@phelps.com
Email: kornd@phelps.com
Email: caroline.perlis@phelps.com

Adam Harris MS Bar 102955
2602 13th Street, Suite 300
Gulfport, Mississippi 39501
Telephone: 228 679 1130
Facsimile: 228 679 1131
Email: adam.harris@phelps.com

**ATTORNEYS FOR DEFENDANT BOLLINGER SHIPYARDS, LLC**

## CERTIFICATE OF SERVICE

I certify that on October 2, 2026, a copy of this Motion was electronically filed with the Clerk of Court, using the CM/ECF system, which notified all counsel of record.

_*/s/David M. Korn*___
David Korn

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** | **PLAINTIFF** |
| **VS.** | **CIVIL ACTION NO.: 1:25-CV-288-TBM-RPM** |
| **BOLLINGER SHIPYARDS, LLC** | **DEFENDANT** |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

**MAY IT PLEASE THE COURT:**

Defendant, Bollinger Shipyards, LLC ("Bollinger" or "Defendant") respectfully submits this Memorandum in Support of its Motion to Compel Discovery. In short, Plaintiff, the Equal Employment Opportunity Commission ("EEOC" or "Plaintiff"), has refused to identify Ms. Senseney's medical providers, other than her primary care physician, despite putting Ms. Senseney's alleged disability and medical history squarely at issue in this lawsuit by suing for four separate counts of disability discrimination on her behalf. Plaintiff has also refused to produce a signed general release for Ms. Senseney's medical records, even though Plaintiff sues for disability discrimination and seeks damages for alleged medical costs and emotional distress. Plaintiff has even refused to produce signed HIPAA authorizations for the specific medical providers that are already known by Defendant to have treated Ms. Senseney during the underlying facts of this lawsuit.

Plaintiff's refusal to respond to Defendant's discovery requests seeking the identities of Ms. Senseney's medical providers and authorizations for Ms. Senseney's medical records is unreasonable and not supported by law. This Court should therefore compel Plaintiff to identify all of Ms. Senseney's medical providers who have treated her since she "was prescribed an opioid

and developed opioid dependency," which Plaintiff admits was more than ten years ago. This Court should also compel the EEOC to produce signed authorizations permitting Defendant to obtain all of Ms. Senseney's medical records over that same time period, including but not limited to authorizations addressed to the medical providers already known to have treated Ms. Senseney during the underlying events of this lawsuit: Family Medical Services ("FMS"), Occupational Health Center ("OHC"), and Dr. James B. Martin.

## I. BACKGROUND

Plaintiff filed suit on Ms. Senseney's behalf on September 25, 2025. R. Doc. 1. Plaintiff brings four causes of action against Defendant, which all allege that Bollinger discriminated against Ms. Senseney on the basis of her alleged disability: (1) "Disparate Treatment Based on Actual Disability;" (2) "Disparate Treatment Based on 'Record Of' Disability;" (3) "Disparate Treatment Based on 'Regarded As' Disability Discrimination;" and (4) "Disparate Treatment Based on Unlawful Qualification Standard." R. Doc. 1, ¶¶ 35-63. Plaintiff essentially argues that Defendant discriminated against Ms. Senseney on the basis of her disability after Defendant placed Ms. Senseney on medical leave because she disclosed that she was prescribed two medications: Adderall and Suboxone.

Plaintiff specifically seeks damages on Ms. Senseney's behalf that can only be proved through her medical records. For example, Plaintiff seeks "compensation for any past and future pecuniary losses, *including medical expenses*…resulting from the unlawful employment practices described above." R. Doc. 1, Prayer for Relief, Subsection D. The EEOC also claims damages for Ms. Senseney's "*emotional pain and suffering*, inconvenience, loss of enjoyment of life, and humiliation." R. Doc. 1, Prayer for Relief, Subsection E. Plaintiff's Initial Disclosures confirm that Plaintiff seeks damages for Ms. Senseney's emotional distress. Specifically, Plaintiff's Initial Disclosures state that Plaintiff seeks "non-pecuniary compensatory damages in the form of, for

example, *emotional pain, suffering*, inconvenience, humiliation, *mental anguish*, loss of enjoyment of life, loss of elf-esteem, and loss of social standing and respect." Exhibit 1 (Plaintiff's Initial Disclosures).

The Parties first broached the topic of the discovery of Ms. Senseney's medical records during the Parties' conferences regarding the details of the Case Management Order required by this Court. Defendant confirmed that it intended to seek HIPAA authorizations signed by Ms. Senseney that would allow Defendant to discover certified copies of Ms. Senseney's medical records. On February 3, 2026, Plaintiff's counsel asked Defendant to share "the HIPAA-compliant medical authorization that [Defendant had] in mind." Exhibit 2 (February Emails). The next day, Defense counsel forwarded draft HIPAA authorizations. Exhibit 2. These drafts did not include a responsive time period and instead sought Ms. Senseney's medical records "from date of birth through the present." Exhibit 2. The EEOC did not immediately respond to this email. On February 12, 2026, the Court entered the Case Management Order that governs this case, which states that "Plaintiff must execute an appropriate, HIPAA-compliant medical authorization." R. Doc. 17, ¶ 6(F)(3).

On April 13, 2026, Defendant issued its first written discovery requests to Plaintiff. *See* Exhibit 3 (Defendant's Relevant Discovery Requests). Defendant's Interrogatory No. 8 asked Plaintiff to:

> Identify the name and address of each and every hospital, clinic, rehabilitation facility, institution, medical doctor, osteopathic doctor, health care provider, psychologist, psychiatrist, counselor or clergy member (collectively, "healthcare providers") by whom the Charging Party was treated, examined, or counseled from April 1, 2016 to the present. Please provide the full name, address and telephone number of each healthcare provider that you identify and the reason(s) for treatment by that healthcare provider.

Exhibit 3.[1] Defendant's Interrogatory No. 11 asked Plaintiff to

[1] This time period reflects about ten (10) years prior to the date that the discovery request was issued.

> Please identify each prescription and non-prescription drug the Charging Party has taken or was prescribed/advised to take for any physical, mental, emotional, or other condition at any time since April 1, 2016 to the present, whether prescribed for Charging Party or for any other person, and for each drug, state:
>
> a. Name of drug
> b. Dosage of drug
> c. Condition or problem for which drug was prescribed or taken
> d. Dates or period of time the drug was taken
> e. Name, address, and telephone number of prescribing doctor, if applicable; and
> f. Name, address, and telephone number of drug store or pharmacy where the prescription was filled or the drug was purchased.

Exhibit 3. Additionally, because Plaintiff had not yet stated its position regarding whether it would produce the HIPAA authorizations that Defendant forwarded to Plaintiff's counsel in February, Defendant's Request for Production No. 13 formally asked Plaintiff to "[p]roduce an executed copy of each of the attached forms, including: … HIPAA Authorization for Use and Disclosure of Information (Excluding Psychotherapy Notes) and HIPAA Authorization for Use and Disclosure of Psychotherapy Notes)." Exhibit 3. Defendant's Requests for Production of Documents enclosed proposed HIPAA authorizations. Exhibit 3. These HIPAA authorizations were substantially similar to those forwarded to Plaintiff on February 4, 2026, but included a responsive time period of April 1, 2016 through the present, consistent with Defendant's Interrogatory Nos. 8 and 11. Exhibit 3.

Plaintiff responded to Defendant's first discovery requests on May 13, 2026. Exhibit 4 (Plaintiff's Discovery Responses). Plaintiff's objection and response to Defendant's Interrogatory No. 8 was as follows:

> Plaintiff objects to this interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case. As written, this interrogatory would require Plaintiff to ascertain and identify each and every nurse, pharmacist, EMT, or pastor that she interacted with in the last decade. Doing so would go well beyond the issues relevant to this case.
>
> Plaintiff states that Charging Party has been treated by James B. Martin for her opioid dependency during the relevant time period. Dr. Martin's phone number is

> 228-875-3097. His address is 1103 Hanley Road, Ocean Springs, Mississippi 39564.

Exhibit 4. Plaintiff's objection and response to Defendant's Interrogatory No. 11 was as follows:

> Plaintiff objects to this interrogatory as it is overly broad, unduly burdensome, and disproportionate to the needs of the case because its terms would require Plaintiff to ascertain and identify minute details regarding every medication including over-the-counter medications for everyday ailments that Charging Party has consumed in the past ten years.
>
> Plaintiff states that, during the relevant time period Charging Party took buprenorphine-naloxone to treat her opioid dependency. Charging Party took 1 sublingual film of 8-2 milligram 30 milligram buprenorphine-naloxone twice a day. Charging Party received her prescription from James B. Martin. Dr. Martin's phone number is 228-875-3097. His address is 1103 Hanley Road, Ocean Springs, Mississippi 39564.

Exhibit 4. Plaintiff also refused to produce the HIPAA authorizations requested in Defendant's Request for Production No. 13. Exhibit 4. Plaintiff objected, stating in full that the request "is beyond the scope of discovery in that it asks Plaintiff to create documents that do not exist," despite the fact that Defendant had enclosed proposed HIPAA authorizations in its discovery requests. Exhibit 4.

On June 18, 2025, Plaintiff responded to Defense counsel's February email regarding the original HIPAA authorizations sent in February. Exhibit 5 (June and July Emails). There, Plaintiff's counsel stated that the "EEOC would be prepared to recommend to Ms. Senseney that she sign the[] authorizations" if Defendant was open to making changes to the authorizations, including limiting the time period of the records requested from January 1, 2023 to the present. Exhibit 5. The EEOC's justification for this extremely limited time period was that it encompassed about one year prior to Ms. Senseney's application for work at Bollinger. Exhibit 5.

Defendant replied to Plaintiff regarding Plaintiff's suggested time period for the HIPAA authorizations on July 1, 2026. Exhibit 5. Defendant explained that it could not agree to limit the authorizations to Plaintiff's requested time period because Plaintiff put Ms. Senseney's medical

records squarely at issue by filing its claims for disability discrimination. Exhibit 5. At that time, Defendant was willing to narrow its request for authorizations to a proposed time period of January 25, 2014 to the present, which encompasses 10 years prior to Ms. Senseney's application for employment with Bollinger. Exhibit 5. In this email, Defendant also notified Plaintiff that its objection to Defendant's Interrogatory No. 8 was deficient, and asked Plaintiff to supplement its Interrogatory response by identifying all medical providers who treated Ms. Senseney from January 25, 2014 to the present. Exhibit 5.

The Parties held multiple discovery conferences in an attempt to cure these discovery disputes. After one of these discovery conferences, on August 5, 2026, the EEOC produced Supplemental Responses to Defendant's Interrogatories. Exhibit 6 (Plaintiff's Supplemental Discovery Responses). Plaintiff's Supplemental Response to Defendant's Interrogatory No. 8 states: "Providing further responsive, relevant information, Plaintiff states that Dr. Martin has been Charging Party's primary care physician since January 1, 2023. During this time period, Charging Party has exclusively seen Dr. Martin for the treatment of her opioid dependency and the prescription of buprenorphine-naloxone." Exhibit 6. Plaintiff also supplemented her response to Defendant's Interrogatory No. 11. This Supplemental Response states:

> Providing further responsive, relevant information, Plaintiff states that Charging Party was prescribed buprenorphine-naloxone more than ten years ago. After giving birth to one of her children, Charging Party was prescribed an opioid and developed opioid dependency. Charging Party was then prescribed buprenorphine-naloxone to treat her opioid dependency. Charging Party has been taking buprenorphine-naloxone as prescribed for more than ten years.

Exhibit 6. Despite these admissions, the EEOC ultimately refused to produce HIPAA authorizations for a time period of January 25, 2014 to the present, and refused to disclose any additional medical providers who treated Ms. Senseney during that time period. *See* Exhibit 6.

The Parties attended a discovery conference with the Court to discuss these issues on August 24, 2026. However, the EEOC has continued to refuse to produce the HIPAA

authorizations or identify any additional medical providers, as requested by Defendant. For example, Defendant offered to conduct medical record discovery in stages, such that the EEOC could identify Ms. Senseney's providers for the relevant time period first, and then the Parties could discuss proposed authorizations for specific providers identified. The EEOC has refused all compromises offered by Defendant.

On September 1, 2026, Plaintiff disclosed its expert witnesses to Defendant. *See* Exhibit 7 (Plaintiff's Expert Witness Disclosures and Report). Plaintiff disclosed the identities of three expert witnesses whose testimony the EEOC intends to rely upon at trial: Dr. Kathleen Brady, Dr. James Martin, and Cyrena Muffley, CRNP. Exhibit 7. Plaintiff expects Dr. Martin to testify "concerning his examination, observation, evaluation, diagnosis, and treatment of Ms. Senseney for opioid dependency,"[2] which Plaintiff seems to have admitted has been ongoing since at least April 1, 2016. Exhibit 7, Exhibit 6. Dr. Kathleen Brady also intends to rely on Ms. Senseney's alleged extended history of Suboxone use. For example, Dr. Brady relies on the alleged fact that Ms. Senseney "has been prescribed buprenorphine-naloxone by qualified primary care providers for over 10 years" and that she "was compliant with physician monitoring visits for many years." Exhibit 7. In fact, Dr. Brady's entire conclusion relies on the fact that Ms. Senseney was on "stable buprenorphine-naloxone maintenance therapy," indicating that Ms. Senseney has been taking Suboxone for quite some time. Exhibit 7.

The Court authorized Defendant to file a Motion to Compel regarding these issues on September 18, 2026. However, in an additional attempt to move these issues forward prior to filing its Motion to Compel, Defendant set a final discovery conference with Plaintiff to take place on

[2] Plaintiff more fully disclosed that Dr. Martin "may testify about the presentation, diagnosis, and clinical course of Ms. Senseney's opioid dependency; any functional limitations resulting from Ms. Senseney's opioid dependency, including how opioid dependency substantially limits Ms. Senseney's major life activities; and the treatments he has rendered to Ms. Senseney, including Ms. Senseney's response to and compliance with treatment." Exhibit 7.

September 21, 2026, to discuss whether Plaintiff would agree to produce HIPAA authorizations signed by Ms. Senseney for the specific medical providers that were directly involved in the underlying facts of this case: OHC and FMS. Exhibit 8 (September Emails). While Plaintiff's counsel seemed agreeable to this request during the discovery conference, Plaintiff eventually objected to producing the signed authorizations for Ms. Senseney's records from OHC and FMS because the authorizations proposed by Defendant were not "limited to the examinations that these clinics conducted of Ms. Senseney for Bollinger" and because the Requests sought psychotherapy and other records which Plaintiff contends are unduly broad in light of the "nature of apparent fitness for duty exams by occupational health clinics." Exhibit 8.

Defendant responded the next day, stating that it would withdraw its request for an authorization for psychotherapy notes from OHC and FMS at this time in order to move the case forward.[3] Exhibit 8. Defendant explained, however, that all medical records in the possession of FMS and OHC regarding Ms. Senseney could have been relied upon by the medical professionals when they made their recommendations regarding whether Ms. Senseney was fit for duty to return to work at Bollinger. Exhibit 8. Therefore, the records in the possession of FMS and OHC, regardless of when or for what purpose they were created, are extremely relevant and important to Defendant's defenses in this matter. Exhibit 8. Defendant asked the EEOC to notify Bollinger as soon as possible if it did not intend to produce the signed authorizations for Ms. Senseney's records from OHC and FMS. Exhibit 8. Plaintiff did not respond to this email. Exhibit 8. Defense counsel followed up with Plaintiff's counsel regarding the OHC and FMS authorizations on September 28, 2026. Exhibit 8.

## II. LEGAL STANDARD

---

[3] Defendant reserved its rights to seek HIPAA authorizations for psychotherapy notes from OHC and FMS in the future if there is any indication that these providers might have psychotherapy notes in their possession.

Under Federal Rule of Civil Procedure 26(b)(1), "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." When deciding whether requested material is within the scope of discovery, a court should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Brister v. Crete Carrier Corp.*, 1:25-cv-00361, 2026 WL 1397055, *2 (S.D. Miss. May 19, 2026). "The threshold for relevance at the discovery stage is lower than the threshold for relevance of admissible evidence at the trial stage." *Rogers v. Orleans Parish Sheriff Office*, No. 22-5303, 2025 WL 3760764, *2 (E.D. La. Dec. 30, 2025). At the discovery stage, relevance includes any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Id.* "On a motion to compel, the party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Hinckley v. City of Brandon, Mississippi*, No. 3:25-cv-596, 2026 WL 1454143, *2 (S.D. Miss. May 22, 2026). In other words, "[d]iscovery should be allowed unless the party opposing discovery establishes that the information sought can have no possible bearing on the claim or defense of the party seeking discovery." *Rogers*, 2025 WL 3760764 at *2.

## III. ARGUMENT

### A. Defendant's Motion to Compel Should be Granted

The Case Management Order in this matter states: "Plaintiff must execute an appropriate, HIPAA-compliant medical authorization." R. Doc. 17, ¶ 6(F). Therefore, the question at issue is not whether the EEOC must produce medical records authorizations signed by Ms. Senseney, but rather what the appropriate scope of the authorizations are. Defendant submits that the Court should compel the EEOC to produce HIPAA authorizations, signed by Ms. Senseney, for her

psychotherapy and non-psychotherapy records since she "was prescribed an opioid and developed opioid dependency," which Plaintiff admits occurred more than ten years ago. See Exhibit 6.

"Courts have routinely held that, by putting one's medical condition at issue, a plaintiff waives any privilege to her medical records which she may otherwise have been entitled based on her privacy interest. *Rogers*, 2025 WL 3760764 at *8. "[W]hen a plaintiff asserts a disability discrimination claim, her underlying disability is necessarily put at issue, making medical records related to that disability relevant and broad discovery appropriate." *Hinckley*, 2026 WL 1454143 at *2.

The same is true when a plaintiff seeks emotional distress damages. *Id.* This Court has specifically "held that by asserting a claim for emotional distress and mental anguish, [a] Plaintiff has placed in issue any mental or physical conditions of Plaintiff which could have led to the claimed damages." *Brister*, 2026 WL 1397055 at *2. In fact, "basic fairness requires the other party to be allowed to explore the truth of the party's allegations that he/she suffered emotional distress as a result of the other party's conduct and to determine whether the party suffering any pre-existing emotional distress that may be the (or an) actual cause of the distress." *Hinckley*, 2026 WL 1454143 at *3 (cleaned up).

This Court has recently issued two on-point opinions that show that the Court should grant Defendant's Motion to Compel. The first is *Hinckley v. City of Brandon, Mississippi*, No. 3:25-cv-596, 2026 WL 1454143 (S.D. Miss. May 22, 2026). There, the plaintiff alleged that she suffered from one or more disabilities and claimed emotional distress damages. *Id.* at *2. During discovery, the defendant asked the plaintiff to "identify all medical providers for the ten-year period prior to filing [her] lawsuit, and to execute general medical authorizations permitting the [defendant's] counsel to obtain corresponding medical records." *Id.* at *1. The plaintiff refused, stating that the "records of her general medical history are irrelevant" and that the timeframe of psychotherapy

records sought was too broad. *Id.* The defendant therefore filed a motion to compel, which this Court granted in full.

First, the Court pointed out that it was the plaintiff herself who put her medical records at issue by bringing a claim alleging that she has a disability and by seeking emotional distress damages. *Id.* at *2. Therefore, she had waived her medical privilege, and her records were discoverable. *Id.* The Court also declined to limit the scope of the documents requested to the plaintiff's requested timeframe. In doing so, the Court specifically reasoned that the plaintiff's own expert witness claimed that he would rely on records that were created before the starting date of discovery suggested by plaintiff. *Id.* at *3. The Court noted that "prevailing view among courts in [the Southern District of Mississippi] is that ten years is generally an appropriate starting point" for relevance and proportionality of medical records and pointed to specific facts of the case that justified the production of records reaching back ten-years. *Id.* at *3. The Court therefore granted the defendant's motion to compel, allowing the defendant to discover the plaintiff's psychotherapy and non-psychotherapy records for the ten-year period prior to the plaintiff filing her lawsuit, and requiring plaintiff to identify her medical providers for the same timeframe. *Id.* at *4.

The second on-point case is *Brister v. Crete Carrier Corp*., 1:25-cv-00361, 2026 WL 1397055 (S.D. Miss. May 19, 2026). There, plaintiffs similarly refused to execute HIPAA authorizations related to their claims and alleged damages. For example, the plaintiffs objected to disclosing medical records for "parts of the body not placed into controversy" in their lawsuit. *Id.* at *3. The Court overruled the plaintiffs' objections, stating that it would "not require Plaintiffs' medical providers to limit their production of Plaintiffs' medical history to certain conditions or body areas" because "Defendant is entitled to discovery Plaintiff's medical history outside of the strict areas complained about, as Defendant may develop alternative theories about the cause of injuries through a holistic analysis of Plaintiff's medical history." *Id*. Like the Court in *Hinckley*,

the *Brister* Court ordered the plaintiffs to execute medical authorizations for their medical records going back to ten years prior to the events at issue in the lawsuit. *Id.* And importantly, the Court left the opportunity for an even longer time period of discovery on the table. Specifically, the Court stated: "in the event that the records produced under the medical authorizations reveal that records dating back earlier than ten years may be relevant and discoverable, the Court leaves the door open for Defendant to seek an amended medical authorization to include such records." *Id.*

The Court should grant Defendant's Motion to Compel under Federal Rule of Civil Procedure 26 and in accordance with its holdings in *Hinckley* and *Brister*. It is clear that Plaintiff has put Ms. Senseney's medical history at issue by suing on her behalf for four separate counts of disability discrimination. *See* R. Doc. 1, ¶¶ 35-63. Ms. Senseney's medical records regarding her alleged disability are relevant, and broad discovery of her medical records is appropriate. Moreover, because of the nature of Ms. Senseney's disability (opioid dependence), Ms. Senseney's records from any medical provider who could have been prescribing Ms. Senseney opioids or synthetic opioids is relevant to her disability. Also relevant to her disability is any medical provider to whom Ms. Senseney could have confided in regarding her alleged opioid dependence, any medical providers who could have treated her regarding this dependence, any pharmacy that filled any prescription for an opioid or a synthetic opioid, etc. The nature of Ms. Senseney's alleged disability makes narrowing the discovery of her medical records to certain providers who treated her for certain conditions impossible and is contrary to the precedent set in *Brister* that courts should not limit discovery of medical records to certain body parts or conditions. The EEOC is entitled to broad discovery regarding Ms. Senseney's medical records because the EEOC has brought suit on her behalf alleging disability discrimination.

Similarly, Defendant is entitled to discover Ms. Senseney's mental health records and psychotherapy notes because the EEOC seeks damages for medical expenses and for "emotional

pain and suffering, inconvenience, loss of enjoyment of life, and humiliation." *See* R. Doc. 1, Prayer for Relief, ¶ D, E. Defendant is therefore entitled to discovery regarding "any mental or physical conditions of Plaintiff which could have led to the claimed damages," including documents that could show "whether the party suffer[ed] any pre-existing emotional distress that may be the (or an) actual cause of the distress." *Brister*, 2026 WL 1397055 at *2; *Hinckley*, 2026 WL 1454143 at *3. The law is clear, and basic fairness requires, that Defendant be allowed to discover Ms. Senseney's psychotherapy and non-psychotherapy medical records due to the nature of her claims and the damages sought. See *Rogers*, 2025 WL 3760764 at *8. Like the *Hinckley* and *Brister* Courts, the Court should decline to limit this discovery to certain conditions or body areas, such as non-psychotherapy records. Therefore, the only remaining question is the appropriate timeframe of records that must be authorized for disclosure by Ms. Senseney.

With respect to timeframe of records sought, in the Southern District of Mississippi, the prevailing view among courts is that "ten years is generally an appropriate starting point" regarding discovery of medical records. *Hinckley*, 2026 WL 1454143 at *3. During discovery conferences, in a good faith attempt to work productively with Plaintiff, Defendant therefore agreed to limit the timeframe of medical records sought to ten years prior to Ms. Senseney's application for employment with Bollinger. Exhibit 3; Exhibit 5. However, since this offer, which was rejected by Plaintiff, Ms. Senseney has produced Supplemental Discovery Responses and Expert Witness Disclosures that show that relevant medical records, including those related to Ms. Senseney's alleged disability, were likely created more than ten years prior to Ms. Senseney's application for employment with Bollinger. Specifically, Plaintiff's supplemental response to Defendant's Interrogatory No. 11 states that Ms. Senseney "was prescribed buprenorphine-naloxone more than ten years ago. After giving birth to one of her children, Charging Party was prescribed an opioid and developed opioid dependency. Charging Party was then prescribed buprenorphine-naloxone

to treat her opioid dependency." Exhibit 6. This is confirmed by the expert report written by Plaintiff's expert witness, Dr. Kathleen Brady, which states that Ms. Senseney has "been prescribed buprenorphine-naloxone (brand named Suboxone) to treat her OUD for more than 10 years." Exhibit 7. In fact, Dr. Brady's entire report focuses on Ms. Senseney's long-term use of the drug, noting that "Ms. Senseney has been prescribed buprenorphine-naloxone by qualified primary care providers for over 10 years," describing this use as "maintenance therapy," and concluding that "[f]or individuals on stable, long-term maintenance therapy, there is limited evidence of cognitive or psychomotor impairment." Exhibit 7. It is clear that Plaintiff's entire theory of its case is that Ms. Senseney was taking her prescribed medication for more than ten years and therefore should not have been experiencing side effects. Exhibit 7. This situation is exactly on-point to the situation in Hinckley, where the Court allowed broad discovery of the plaintiff's medical records in part because the plaintiff's own expert relied on the records that defendant sought. *Hinckley*, 2026 WL 1454143 at *3. The EEOC cannot rely on the fact that Ms. Senseney has allegedly taken Suboxone for more than ten years while simultaneously prohibiting Defendants from discovery records that could confirm, deny, or call the same into question. Defendant is therefore entitled to discover Ms. Senseney's medical records since she "was prescribed an opioid and developed opioid dependency." Exhibit 6.

Finally, Defendant cannot discover Plaintiff's medical records for any timeframe if Plaintiff does not disclose the medical providers who treated her. While some of Ms. Senseney's medical providers are already known to Defendant, such as Dr. Martin, OHC, and FMS, the discovery responses and expert report produced by Plaintiff suggest that other medical providers have treated Ms. Senseney while she has allegedly struggled with opioid dependence. For example, Plaintiff admitted that the original opioid that was prescribed to Ms. Senseney was prescribed in connection with the birth of her child, which was presumably monitored by a physician other than

her primary care physician. Exhibit 6. Moreover, Plaintiff's expert report states that Ms. Senseney "has been prescribed buprenorphine-naloxone by qualified primary care *providers* for over ten years," while Plaintiff has only admitted that she has been treated by Dr. Martin. Exhibit 7. This Court has specifically required a plaintiff in an almost identical situation as Ms. Senseney to identify her medical providers so that the Defendant could discover her medical records. *See Hinckley*, 2026 WL 1454143 at *4. Moreover, HIPAA requires that a medical records authorization include "the name or other specific identification of the person, or class of persons, to whom the covered entity may make the requested use or disclosure." 45 C.F.R. 164.508. Therefore, in order for Defendant to be able to discover Ms. Senseney's medical records, Plaintiff must disclose the identities of the medical providers who treated Ms. Senseney during the relevant timeframe.

The law is clear that Ms. Senseney's medical records are discoverable in this matter due to the nature of Plaintiffs' claims and the damages sought on behalf of Ms. Senseney. The law is also clear that an appropriate temporal limitation for the discovery of Ms. Senseney's records is from the date that Ms. Senseney was prescribed the opioids that were connected to her development of opioid use disorder, the alleged disability that Plaintiff relies on in its lawsuit. Plaintiff admits that Ms. Senseney was first prescribed this opioid more than ten years ago and has been taking Suboxone for more than ten years. Ms. Senseney's expert report shows that Plaintiff's entire theory of the case is that Ms. Senseney was on a "maintenance dose" of suboxone for more than ten years and therefore allegedly did not experience side effects from the medication. It would not be fair nor just for Plaintiff to clearly rely on Ms. Senseney's medical history from more than ten years ago, while simultaneously objecting to Defendant's discovery of the records that could corroborate or refute the same allegations. Moreover, Plaintiff seeks compensation for medical expenses and emotional distress, which can only be verified through discovery of both her psychotherapy and

non-psychotherapy records for the relevant timeframe. Therefore, the Court must compel Plaintiff identify the medical providers who have treated Ms. Senseney since she was originally prescribed the opioid that led her to developing opioid dependency, and to produce HIPAA authorizations for psychotherapy and non-psychotherapy records for each of the providers identified.

**B. Defendant is Entitled to Attorney's Fees Incurred in Connection with this Motion.**

Federal Rule of Civil Procedure 37(a)(5)(A) states that if a Motion to Compel Discovery is granted, "the court must, after giving an opportunity to be heard, require the party…whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." "Generally, if a motion to compel discovery responses is granted, the court is required to impose monetary sanctions unless the imposition is unjustified or the motion was not filed in good faith." *Brister*, 2026 WL 1397055 at *4. Courts within the Fifth Circuit, including this Court, have granted a moving party expenses, including attorney's fees, associated with filing a motion to compel signed authorizations for medical records. *Id. See also Hoffman v. Pinnacle Entertainment, Inc.*, No. 2:24-cv-00583, 2025 WL 2807780 (W.D. La. Sept. 26, 2025).

Defendant here is entitled to attorney's fees and other expenses associated with filing this Motion. The Case Management Order in this case requires Plaintiff to produce medical authorization signed by Ms. Senseney. R. Doc. 17. Defendant offered multiple methods of narrowly tailoring its requests for Ms. Senseney's medical records prior to filing the instant Motion to Compel. For example, Defendant initially offered to narrow the records requested to a period of ten years prior to Ms. Senseney's application for employment with Bollinger, before Defendant was aware that Ms. Senseney has been experiencing opioid use disorder for far longer than ten years. Defendant also offered to conduct medical record discovery in phases, such that Plaintiff could disclose Ms. Senseney's medical providers prior to authorizations and the Parties could

discuss only seeking authorizations for certain medical providers disclosed. Finally, immediately prior to filing this Motion to Compel, Defendant asked if Plaintiff would agree to providing non-psychotherapy medical records authorizations for the medical providers known to have been involved in the underlying facts of this suit: OHC and FMS. Each of Defendant's attempts to conduct good-faith discovery regarding Ms. Senseney's medical records has been rejected or ignored. Therefore, a reward of attorney's fees and expenses related to this Motion is not unjustified, nor was this Motion filed in bad faith. Defendant respectfully requests that in addition to granting Defendant's Motion to Compel, the Court grant Defendant attorney's fees and expenses associated with filing this Motion.

## IV. CONCLUSION

For the foregoing reasons, Defendant, Bollinger Shipyards, LLC, respectfully requests that this Court grant its Motion to Compel Discovery and issue an order compelling Plaintiff to disclose the identities of the medical providers who have treated Ms. Senseney since she was prescribed an opioid and developed opioid dependency as admitted in Plaintiff's Supplemental Response to Defendant's Interrogatory No. 11. Defendant also requests that the Court issue an Order compelling Plaintiff to produce HIPAA authorizations for psychotherapy and non-psychotherapy medical records signed by Ms. Senseney for each of the medical providers identified by Plaintiff as having treated her during this timeframe, including but not limited to Dr. James Martin, Family Medical Services, and Occupational Health Center. Defendant also respectfully requests that the Court award it expenses related to filing this Motion to Compel, including attorney's fees.

THIS the 2nd day of October, 2026.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: */s/David M. Korn*

Mark Fijman MS Bar 99153
David M. Korn (*pro hac vice*)
Caroline E. Perlis (*pro hac vice*)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email: fijmanm@phelps.com
Email: korndd@phelps.com
Email: caroline.perlis@phelps.com

Adam Harris MS Bar 102955
2602 13th Street, Suite 300
Gulfport, Mississippi 39501
Telephone: 228 679 1130
Facsimile: 228 679 1131
Email: adam.harris@phelps.com

**ATTORNEYS FOR DEFENDANT BOLLINGER SHIPYARDS, LLC**

**CERTIFICATE OF SERVICE**

I certify that on October 2, 2026, a copy of this Motion was electronically filed with the Clerk of Court, using the CM/ECF system, which notified all counsel of record.

*/s/David M. Korn*
David Korn

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION** **PLAINTIFF**

**VS.** **CIVIL ACTION NO.: 1:25-CV-288-TBM-RPM**

**BOLLINGER SHIPYARDS, LLC** **DEFENDANT**

## GOOD FAITH CERTIFICATE

All counsel certify that they have conferred in good faith to resolve the issues in question and that it is necessary to file the following Motion to Compel Discovery.

Counsel further certify that:

_________ 1. The motion is unopposed by all parties.

_________ 2. The motion is unopposed by:

____X___ 3. The motion is opposed by: Equal Employment Opportunity Commission

___X____ 4. The parties agree that replies and rebuttals to the motion will be submitted to the magistrate judge in accordance with the time limitations stated in L.U. Civ. R. 7(b)(4).

THIS the 2nd day of October, 2026.

__*/s/ William Thompson*________________
Signature of Plaintiff's Attorney

__William Thompson (NY 5232525_______
Typed Name and Bar Number

_*/s/David M. Korn*___________________
Signature of Defendant's Attorney

__David M. Korn (LA 21676)_______
Typed Name and Bar Number