IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| PLAINTIFF, | ) | |
| | ) | Civil Action No. 1:25cv00288-TBM-RPM |
| v. | ) | |
| | ) | |
| BOLLINGER SHIPYARDS, LLC, | ) | |
| DEFENDANT. | ) | |

**PLAINTIFF EQUAL EMPLOYMENT OPPORTUNITY COMMISSION'S EXPERT WITNESS DISCLOSURE**

Pursuant to Federal Rule of Civil Procedure 26(a)(2), Local Uniform Civil Rule 26(a)(2)(D), and Federal Rules of Evidence 702, 703, and 705, Plaintiff United States Equal Employment Opportunity Commission hereby designates the individuals named below as experts whose testimony the Commission may use at the trial of this matter.

1. Kathleen T. Brady, M.D., Ph.D.
   Medical University of South Carolina
   South Carolina Clinical and Translational Research Institute
   125 Doughty Street, Suite 140
   Charleston, SC 29403

Dr. Brady is a medical doctor who specializes in psychiatry. The attached report sets forth the opinions that Dr. Brady will express, the bases and reasons for them, and the facts and data that Dr. Brady considered in forming them. The attached report also provides a statement of the compensation to be paid to Dr. Brady for her work on this case and lists all other cases in which, during the previous 4 years, Dr. Brady has testified as an expert at trial or by deposition. The attached report, particularly Appendices A and B, also sets forth Dr. Brady's qualifications, including a list of all publications authored in the previous 10 years.

EXHIBIT
7

2. James B. Martin
   1103 Hanley Road
   Ocean Springs, MS 39564

Dr. Martin is a medical doctor who has been Keely Senseney's primary care physician since at least January 1, 2023. During this time, Ms. Senseney has exclusively seen Dr. Martin for the treatment of her opioid dependency and the prescription of buprenorphine-naloxone.

Dr. Martin graduated from the University of Mississippi School of Medicine in 1964. Dr. Martin is actively licensed to practice medicine in Mississippi, where he maintains a primary care practice.

Dr. Martin is expected to testify under Federal Rules of Evidence 702, 703, and 705 concerning his examination, observation, evaluation, diagnosis, and treatment of Ms. Senseney for opioid dependency, including opinions that he formed thereby and set forth in treatment records previously produced at EEOC_0001242-55. Specifically, Dr. Martin may testify about the presentation, diagnosis, and clinical course of Ms. Senseney's opioid dependency; any functional limitations resulting from Ms. Senseney's opioid dependency, including how opioid dependency substantially limits Ms. Senseney's major life activities; and the treatments he has rendered to Ms. Senseney, including Ms. Senseney's response to and compliance with treatment.

3. Cyrena N. Muffley, CRNP
   5832 Laramie Lane
   Moss Point, MS 39562

Ms. Muffley is a certified registered nurse practitioner who twice examined Ms. Senseney in 2024 at Defendant's request to assess whether she could work as a shipfitter.

Ms. Muffley received a Mississippi nurse practitioner license in 2019, and that license remains active. Ms. Muffley received a Mississippi registered nurse license in 2008, and that license remains active.

Ms. Muffley is expected to testify under Federal Rules of Evidence 702, 703, and 705 concerning her examination, observation, and evaluation of Ms. Senseney on January 26, 2024 and April 15, 2024, including opinions that she formed thereby and set forth in treatment records previously produced at BOLLINGER-000425-29 and BOLLINGER-000453-64. Specifically, Ms. Muffley is expected to testify that Ms. Senseney could perform the essential job functions of a shipfitter, that Ms. Senseney was compliant with treatment, that Ms. Senseney experienced no side effects from buprenorphine-naloxone, and that Ms. Senseney was "cleared to return to regular duty."

Respectfully submitted, September 1, 2026,

s/ Trent Thompson
Wm. Trent Thompson
NY Bar No. 5232525
Attorney for Plaintiff
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, Alabama 35205
Telephone: (205) 651-7065
Fax: (205) 212-2041
Email: william.thompson@eeoc.gov

# EXPERT REPORT OF KATHLEEN THERESA BRADY, MD, PhD

***EEOC v. Bollinger Shipyards, LLC*** **(Civil Action No. 1:25cv288-TBM-RPM) (S.D. Miss.)**

## INTRODUCTION

I have been asked to prepare an expert report in the action of *Equal Employment Opportunity Commission v. Bollinger Shipyards, LLC*, Civil Action No. 1:25cv288-TBM-RPM in the United States District Court for the Southern District of Mississippi, Southern Division. The Equal Employment Opportunity Commission (EEOC) asked me to provide consultation and testimony addressing three topics:

1. What research and scholarly publications indicate about the physiological effects of prescribed buprenorphine-naloxone use including whether such effects are particularized to each individual.
2. Whether Charging Party Keely Senseney's (Ms. Senseney's) use of prescription buprenorphine-naloxone was compatible with the safe performance of her duties as a shipfitter for Defendant.
3. The medical reasonableness of Defendant's categorical exclusion of individuals taking buprenorphine-naloxone from the shipfitter position.

## QUALIFICATIONS

I am a board-certified Addiction Psychiatrist, and I have a PhD in Pharmacology. I have been treating individuals with substance use disorders, including opioid use disorder (OUD), for over 40 years. I have conducted research focused on medication treatments for OUD, including buprenorphine. I am the former President of the International Society of Addiction Medicine, the American Academy of Addiction Psychiatry, and the Association for Medical Education and Research in Addictions. I am currently a Distinguished University Professor at the Medical University of South Carolina where I lead the Southern Consortium Node of the National

Institute of Drug Abuse-funded Clinical Trials Network. Through this network, I have led over 45 clinical trials of treatments for substance use disorders, including OUD. My qualifications, including publications over the past 10 years, are further detailed in the accompanying curriculum vitae (Appendix A) and publication list (Appendix B).

## LIST OF PRIOR TESTIMONY WITHIN THE LAST FOUR YEARS

1. *Glassman v. R.J. Reynolds Tobacco Co.*, CACE-07-036519 (Fla. 17th Cir. Ct., Broward Cnty.) – trial testimony on May 28-29, 2026
2. *A.O. v. Covelli Family Limited Partnership II*, 2024-CA-001100(B) (Fla. 9th Jud. Cir. Ct., Osceola Cnty.) – deposition testimony on January 20, 2026

## COMPENSATION

I am being paid $250 per hour for my services in this case, except that travel will be compensated at a rate of $75 per hour.

## MATERIALS REVIEWED

In preparing this report, I reviewed the following materials.

1. Charge of Discrimination (EEOC_0000012-0000013)
2. Declaration of Jerome Eymard (EEOC_0000537-0000539)
3. Defendant's Answer (Docket No. 10)
4. Defendant's Responses to the EEOC's First Set of Interrogatories
5. Defendant's EEO Policy (EEOC_0000530-0000531)
6. Defendant's Health, Safety, and Environmental Policy (EEOC_0000532)
7. Defendant's Medication Disclosure Policy (EEOC_0000533-0000534)
8. Defendant's Position Statement (EEOC_0000525-0000529)
9. Defendant's Shipfitter Job Description (EEOC_0000536)

10. Defendant's Supplemental Statement (EEOC_0000137-0000139)
11. Emails from Ms. Senseney to Defendant's HR (EEOC_0000540-0000541)
12. FMS Documentation (EEOC_0000292-0000294)
13. J. Martin Notes (EEOC_0001242-0001255)
14. OHC Documentation (EEOC_0000295-0000321)
15. Plaintiff's Complaint (Docket No. 1)
16. Ms. Senseney's Signature of Handbook (EEOC_0000535)

## METHODOLOGY

I reviewed the records and communications listed above. On June 5, 2026, I had a one-hour Zoom interview with Ms. Senseney. To reach my conclusions, I relied on my knowledge and experience with individuals who have OUD and the pharmacologic effects of buprenorphine-naloxone as well as the scholarly research cited herein (Appendix C).

## SUMMARY OF RELEVANT FACTS

Ms. Senseney has OUD (also known as opioid dependency). Ms. Senseney reports that she has been prescribed buprenorphine-naloxone (brand name Suboxone) to treat her OUD for more than 10 years. Ms. Senseney reports that she does not experience any side effects from her prescribed use of buprenorphine-naloxone.

Defendant hired Ms. Senseney as a shipfitter in January 2024. After a medical clearance, Ms. Senseney began work on February 21, 2024.

On April 12, 2024, Ms. Senseney was called to a meeting with Defendant's human resources personnel. They informed Ms. Senseney that the prescription buprenorphine-naloxone she was taking was considered "safety-sensitive." They informed Ms. Senseney that she would need a medical evaluation to determine if she could perform her job without being a direct threat

to herself or others while she was taking buprenorphine-naloxone. Defendant then placed Ms. Senseney on unpaid medical leave.

At Defendant's request, Ms. Senseney was evaluated by a certified registered nurse practitioner at the Occupational Health Center in Pascagoula, Mississippi, on April 15, 2026. The practitioner conducted a physical examination. The practitioner determined that Ms. Senseney was able to perform her work duties and cleared her to return to work.

Defendant then sought the opinion of another occupational physician. On June 28, 2024, Defendant requested a medical review by Family Medical Services in Cut Off, Louisiana. On July 18, 2024, physician assistant Chanh Doan and physician Darren Duet determined that Ms. Senseney would be restricted from safety-sensitive duties. Neither Mr. Doan nor Dr. Duet examined Ms. Senseney, and it is not clear how this determination was made.

After this second examination, Ms. Senseney repeatedly asked about returning to work for Defendant. Defendant informed Ms. Senseney that she would need to cease her use of her prescribed buprenorphine-naloxone if she was to return to work. Ms. Senseney was unwilling to cease the use of her prescribed buprenorphine-naloxone. To date, Defendant has not allowed Ms. Senseney to return to work while taking the buprenorphine-naloxone for her OUD.

## ANALYSIS AND OPINIONS

1. Buprenorphine-naloxone is a combination medication that contains both buprenorphine (a partial agonist at the mu opioid receptor) and naloxone (a mu opioid receptor antagonist). It has been demonstrated in multiple clinical trials to be an effective treatment for OUD that is safer and has less side effects when compared to older treatments such as methadone. Major professional organizations, including the American Society of Addiction Medicine and the Substance Abuse and Mental Health Services Administration, support

buprenorphine-naloxone maintenance treatment as an evidence-based intervention that significantly reduces morbidity and mortality.[1-2] In the treatment of OUD, buprenorphine-naloxone is prescribed by a physician and administered by the patient daily for months to years, with regular physician check-ins to monitor side effects or remission to OUD. With acute administration to an individual who has never taken the medication before, buprenorphine-naloxone can produce psychomotor and cognitive slowing shortly after dosing. However, after patients are stabilized on maintenance therapy (greater than 3 months), these effects are substantially attenuated[3-4] with performance improving in individuals taking buprenorphine-naloxone over time.[5-6] Many studies find that, for individuals maintained on buprenorphine-naloxone, performance is not significantly different from healthy controls on measures of cognition and psychomotor performance.[3-4] This area has been studied because of concerns about driving, workplace safety, and occupational fitness-for-duty evaluations.[7]

2. Defendant placed Ms. Senseney on unpaid leave on April 12, 2024, for evaluation of her ability to perform in a safety-sensitive position because she was prescribed buprenorphine-naloxone. There were no reports of impaired job performance. The referral for evaluation was made based solely on the fact that she was taking the medication buprenorphine-naloxone.

The certified registered nurse practitioner at Occupational Health Center evaluated Ms. Senseney and cleared her to return to work. Despite this clearance, Defendant sought the opinion of Family Medical Services.

Family Medical Services did not examine Ms. Senseney. Relying only on Ms. Senseney's position and prescribed use of buprenorphine-naloxone, Family Medical Services determined that Ms. Senseney could not safely perform her job duties. Family Medical Services appears to have based its opinion on possible side effects of acute administration of buprenorphine-

naloxone. However, the potential side effects of acute administration would not have been relevant to Ms. Senseney. Ms. Senseney has been prescribed buprenorphine-naloxone by qualified primary care providers for over 10 years. Records from her physician, James Martin, MD, indicate that she had monthly check-ins throughout the time she worked for Defendant. During these visits, Dr. Martin consistently reported that Ms. Senseney was stable and taking her buprenorphine-naloxone as prescribed with no evidence of side effects or return to drug abuse. Dr. Martin obtained a urine drug screen monthly to assess for illicit drug use and consistently found that there was only evidence of use of buprenorphine-naloxone as prescribed.

In sum, Ms. Senseney was taking buprenorphine-naloxone as prescribed for her OUD. She was compliant with physician monitoring visits for many years. She exhibited no objective evidence of cognitive or psychomotor impairment, and she was cleared for return to work by a qualified professional after a face-to-face physical evaluation. Family Medical Service's determination that Ms. Senseney could not perform her duties appears to be based on a possible side effects of acute therapy which are not relevant to Ms. Senseney's maintenance therapy. The determination was not substantiated by an examination demonstrating impairment. There is no evidence that Ms. Senseney's use of prescribed buprenorphine-naloxone to treat her OUD interfered with her ability to perform her job safely.

3. Defendant's policy appears to be that the use of buprenorphine-naloxone leads to a categorical exclusion for safety-sensitive jobs. While under some circumstances (acute use in an opioid-naïve individual) buprenorphine-naloxone can cause cognitive/psychomotor impairment, the evidence is overwhelming that individuals on maintenance therapy like Ms. Senseney show little cognitive/psychomotor impairment. Therefore, the best available medical

and scientific evidence does not support treating all individuals taking buprenorphine-naloxone as categorically unfit for safety-sensitive work.

## CONCLUSIONS

1. Buprenorphine-naloxone is a commonly prescribed and very effective medication for OUD. For individuals on stable, long-term maintenance therapy, there is limited evidence of cognitive or psychomotor impairment.

2. Ms. Senseney was on stable buprenorphine-naloxone maintenance therapy. There were no documented reports of performance impairment on the job. There was no evidence that Ms. Senseney was unable to perform safely in a safety-sensitive job setting.

3. The best available medical and scientific evidence does not support treating all individuals taking buprenorphine-naloxone as categorically unfit for safety-sensitive work. Therefore, Defendant's categorical exclusion of individuals taking buprenorphine-naloxone on maintenance therapy from its shipfitter position is not supported by the available evidence.

My opinions are subject to modification if new information becomes available.

9/1/2026
Date

Kathleen Theresa Brady
Kathleen Theresa Brady, MD, PhD