IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>PLAINTIFF,<br><br>v.<br><br>BOLLINGER SHIPYARDS, LLC,<br><br>DEFENDANT. | ) | Civil Action No.<br>1:25cv00288-TBM-RPM |

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR A PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENAS DIRECTED TO NON-PARTY FORMER EMPLOYERS

Pursuant to Rule 26(c) and Rule 45(d)(3) of the Federal Rules of Civil Procedure, and for the reasons set forth below, Plaintiff U.S. Equal Employment Opportunity Commission respectfully requests that this Court quash or modify the non-party subpoenas intended to be served by Defendant Bollinger Shipyards, LLC, on an aggrieved individual's former employers and enter a Protective Order that prevents Bollinger from issuing further subpoenas to former employers in the absence of approval from this Court or consent by the parties.

## Background

The Commission filed this action after receiving, investigating, and substantiating a charge of disability-based discrimination that Ms. Keely Senseney filed against her employer, Bollinger. At its core, this case is about whether Bollinger unlawfully discriminated against Ms. Senseney by placing her on unpaid leave after a few months of employment because she was taking a prescription medication to treat her opioid dependency.

Ms. Senseney applied to work for Bollinger as a shipfitter on January 25, 2024, citing her experience with two other companies as a shipfitter and shipfitter helper. (Bollinger-000084-90.) Bollinger hired Ms. Senseney the next day. (Bollinger-000080-82.) Before hiring Ms. Senseney, Bollinger (1) subjected Ms. Senseney to an interview "craft test" and determined that she passed (Bollinger-000093-95), and (2) required that Ms. Senseney submit to an examination by an occupational health clinic. Later that month, after hiring Ms. Senseney but before scheduling her to begin work, Bollinger hired an outside vendor to conduct a check of her address and criminal history. (Bollinger-000097.) Tellingly, there is no indication that anyone at Bollinger ever attempted to contact Ms. Senseney's former employers to discuss her qualifications before deciding to employ her as a shipfitter, or that Bollinger ever considered any such information in making that employment decision.

Bollinger now seeks to serve subpoenas on Ms. Senseney's prior employers for "ANY AND ALL information . . . concerning the hiring, the employment and/or separation of KEELY SENSENEY," arguing that Ms. Senseney's "work performance at her two prior employers is directly relevant to her qualifications to perform the role of shipfitter." (Sept. 16, 2026 Ltr. from Perlis.) Bollinger also speculates that Ms. Senseney's former employer may have documented whether "she was prescribed the same dosage of [medication]" at the time she worked for them, "whether she had any type of workplace incidents," or "whether those separations had anything to do with her [medication] use." (*Id.*) Even if those were legitimate avenues for discovery, Bollinger's subpoenas are not narrowly tailored to such issues. Instead, they seek "**ANY AND ALL** information . . . concerning the hiring, the employment and/or separation of **KEELY SENSENEY**," including specifically:

> any and all documents relating to the hiring, employment and/or separation of **KEELY SENSENEY**, and are not limited to the following illustrative examples:

> personnel file, supervisory file, disciplinary file, work evaluations/performance records, records related to any workplace incidents, all applications for employment, dates of service, pay raises, salary, performance appraisals, benefits, days absent/tardy, and reasons therefor, leave of absence documents, date of termination, reasons therefor, any correspondence, and any other file retained on **KEELY SENSENEY**.

(ECF No. 24, Notice of Intent to Serve Subpoena Duces Tecum.)

The Commission has repeatedly conferred with Bollinger about the unduly broad scope of these subpoenas and their irrelevance to this action, but Bollinger has declined to narrow the scope of the subpoenas. An unbounded "fishing expedition" into every scrap of paper a prior employer might retain about a claimant exceeds the guardrails of Rule 26 and Rule 45. The Commission therefore moves for a protective order and to quash or modify the subpoenas.

## Standard of Review

Under Federal Rule of Civil Procedure 26(b)(2)(C), a "court must limit the frequency or extent of discovery" if "the proposed discovery is outside the scope permitted" or "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."

Furthermore, under Rule 26(c)(1), discovery may be limited "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." In the Fifth Circuit, "courts have superimposed a somewhat demanding balancing of interests approach to the Rule" under which "the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party" and "also weigh relevant public interests." *See Cazorla v. Koch Foods of Miss., L.L.C.*, 838 F. 3d 540, 555 (5th Cir. 2016) (vacating and remanding discovery orders upon interlocutory appeal from individual plaintiff and EEOC to ensure "discovery that adequately protects the diverse and competing interests at stake"). In addition, Rule 45(d)(3) provides that a court "must quash or modify a

subpoena" that requires "disclosure of privileged or other protected matter" or "subjects a person to undue burden."

## Argument

### A. The subpoenas should be quashed in their entirety as facially overbroad.

Bollinger's subpoenas should be quashed at the outset as facially overbroad, because they effectively request all information about Ms. Senseney in each former employer's possession. "A court may find that a subpoena presents an undue burden when the subpoena is facially overbroad." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). Here, Bollinger's subpoenas seek "**ANY AND ALL** information . . . concerning the hiring, the employment and/or separation" of Ms. Senseney.

As the Supreme Court has cautioned, "employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist [employment discrimination] claims," but faithfully "invok[ing] the appropriate provisions of the Federal Rules of Civil Procedure will deter most abuses." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 363 (1995). District courts have repeatedly applied that instruction to quash subpoenas like Bollinger's. *See Zamora v. GC Servs., LP*, 2017 WL 1861843 (W.D. Tex. Feb. 17, 2017) (granting "Plaintiff's motions as to these requests to both the prior and subsequent employers"); s*ee also Paxton v. Landesk Software, Inc.*, 332 F.R.D. 368, 369 (M.D. Fla. 2019) ("Even assuming that certain documents from certain employers may be relevant and proportional, Defendant has made no attempt to limit the scope of each subpoena to such documents, or to otherwise tailor each subpoena to each employer to prevent requesting irrelevant information."); *EEOC v. Southern Haulers, LLC*, 2012 WL 1768064, at *3 (S.D. Ala. May 17, 2012) ("The mere possibility that Southern Haulers might discover[] some evidence that relates to Williams' job qualifications at the time it refused to hire him, or even to ask him about

his qualifications, is insufficient grounds to permit the broad discovery of all personnel records from every pre-incident employer dating back to 2002.”). This Court should likewise quash these subpoenas as facially overbroad.

**B. Bollinger has not established the relevance of the information requested.**

As a further matter, none of the information sought by the subpoenas is relevant. Indeed, throughout all its communications with Plaintiff and this Court, Bollinger has identified no basis beyond speculation to think any information held by Ms. Senseney’s former employers could be relevant to the claims or defenses in this action. *See Gonzalez v. Springs of Lady Lake ALF, L.L.C.*, 2011 WL 13302410, at *2 (M.D. Fla. Mar. 10, 2011) (“Defendant argued that Plaintiff's prior employment records will help to determine if he is credible with respect to his past employment. The Court, however, is not inclined to let Defendant engage in such a fishing expedition without a more legitimate reason for the relevancy of the requested documents. The burden is on Defendant to provide supporting documentation to substantiate such a broad search, as the relevancy is not apparent on its face.”).

While Bollinger has argued that records held by former employers are “directly relevant to [Ms. Senseney’s] qualifications to perform the role of shipfitter at Bollinger,” (Sept. 16, 2026 Ltr. from Perlis), Bollinger itself did not think the information within those records was relevant to the decision it made in January 2024 to hire Ms. Senseney to work as a shipfitter. Indeed, there is no indication in the record that Bollinger contacted Ms. Senseney’s former employers before hiring her. Rather, the documentary evidence shows that Bollinger hired Ms. Senseney almost immediately after she applied and upon conducting its own “craft test” of Ms. Senseney’s qualifications to work as a shipfitter. As such, because the aggrieved individual’s “performance with other employers appears at present to have attenuated relevance to the issues at stake in this action[, w]holesale production of Plaintiff's personnel records based on theoretical possibilities

of relevance is not proportional to the needs of this case." *Reed v. Madison Cnty, Miss.*, 2016 WL 11640189, at *2 (S.D. Miss. Nov. 1, 2016) (denying defendant's motion to compel plaintiff's personnel records, reasoning that defendant was "generically digging for dirt").

Bollinger has suggested that the records held by former employers "*could* also disclose whether she had any type of workplace incidents during her employment . . . that *could* support Defendant's argument that she could pose a direct threat." (Sept. 16, 2026 Ltr. from Perlis) (emphasis added.) However, there is no indication in the record that Bollinger requested any such information before deciding to exclude Ms. Senseney from the workplace. Nor is there any indication that the occupational health clinics that Bollinger engaged to evaluate Ms. Senseney thought that such records, if they exist, would be relevant. Instead, without seeking such records from Ms. Senseney's former employers, Bollinger's occupational health clinics repeatedly evaluated Ms. Senseney's fitness to work as a shipfitter. Accordingly, Bollinger cannot now "undertake extensive discovery into an employee's background or performance on the job to resist claims." *McKennon*, 513 U.S. at 363 ("The employer could not have been motivated by knowledge it did not have and it cannot now claim that the employee was fired for the nondiscriminatory reason.").

Bollinger has also offered that the records held by former employers "are relevant because they *could* either confirm or deny . . . that Ms. Senseney has been taking [medication] long-term" and "*could* also show whether she was prescribed the same dosage." (Sept. 16, 2026 Ltr. from Perlis) (emphasis added). However, Bollinger could more directly and less burdensomely obtain any information relevant to this inquiry through a properly limited request for records from the medical provider who prescribed the medication to Ms. Senseney. *See EEOC v. Jack Marshall Foods, Inc.*, 2009 WL 10704882, at *4 (S.D. Ala. Aug. 4, 2009)

("Sifting the personnel records of complainants' prior employers for medical information which, if present, might relate to some claims of the complainants in this case offers poor justification for the discoverability of the employees' prior employment records. Interrogatories and depositions are a far more reasonable way to obtain this information."). Nor should the tangential possibility that Ms. Senseney's former employers may have documented sensitive medical information in her personnel file give Bollinger license to leaf through the records in their entirety. *See EEOC v. Renaissance III Org.*, 2006 WL 832504, at *1 (N.D. Tex. Mar. 30, 2006) ("Such a conclusory assertion, unsupported by any facts, evidence, or citations to legal authority, amounts to nothing more than a fishing expedition and does not justify the wholesale production of confidential employment records. Even if the discovery sought by defendant is reasonably calculated to lead to the discovery of admissible evidence, the court finds that the privacy interests of the charging parties far outweigh any likely benefit to defendant in obtaining the records it seeks.").

Bollinger has also contended that the records held by former employers may be relevant "because they *may* refute Ms. Senseney's claim for emotional distress damages." (Sept. 16, 2026 Ltr. from Perlis.) However, "Defendant's contention that such dated information . . . 'may' demonstrate an alternative source of emotional distress inches over the line into a 'fishing expedition' barred by the applicable rules." *Reed*, 2016 WL 11640189, at * 4. Indeed, Bollinger "has submitted no evidence to suggest that the employment records sought are likely to produce any information probative of emotional distress." *Erwin v. OBI Seafoods LLC*, 2023 WL 4457153, at *3 & n.2 (W.D. Wash. July 11, 2023) ("The mere possibility that employment records *might* contain such information is insufficient given the sensitive nature of such records."); *see also Lyzer v. Caruso Produce, Inc.*, 2018 WL 11489791, at *2 (D. Ore. Oct. 4,

2018) (granting protective order in part upon reasoning that "personnel files are unlikely to contain evidence relating to his alleged emotional distress damages, and any such discovery is available from an alternative source"); *Moll v. Telesector Resources Grp., Inc.*, 2016 WL 6093995, at *3 (W.D.N.Y. Oct. 19, 2016) ("[I]t seems significantly more likely that evidence of alternative sources for such distress would be found in the medical records of plaintiff's health care providers rather than the personnel records . . . The Court will not permit [defendant] to engage in a fishing expedition of the personnel records. . . .").

Each of Bollinger's attempts to justify the relevance of the information it wishes to subpoena is built upon a foundation of speculation. Accordingly, because Bollinger has failed to meet its burden to substantiate the relevance of the subpoenas to Ms. Senseney's former employers with any explanation based on facts, the subpoenas should be quashed and a protective order entered. *See* Fed. R. Civ. P. 26(b)(2)(C).

**C. The subpoenas are unduly burdensome, contrary to public policy, and not proportional to the needs of the case.**

Even if Bollinger could carry its burden to show that the subpoenas are neither overbroad nor irrelevant, which it cannot, "the district judge must compare the hardship to the party against whom discovery is sought against the probative value of the information to the other party." *Cazorla*, 838 F. 3d at 555. Here, the unbounded subpoenas amount to a fishing expedition more likely to result in annoyance and embarrassment to Ms. Senseney, and burden and expense to non-parties, than admissible evidence. *See* Fed. R. Civ. P. 26(c)(1).

The Fifth Circuit has instructed that a court considering a non-party subpoena must "also weigh relevant public interests." *Cazorla*, 838 F. 3d at 555. Here, federal law provides a right of action for individuals aggrieved by employment discrimination and mandates that the EEOC assert claims on behalf of such individuals in appropriate cases. It would be contrary to the

public interest to permit a defendant to mount an unbounded fishing expedition through the employment history of any person who dares file a claim under those statutes, as doing so would have a chilling effect on the filing of such charges and undermine meaningful enforcement of the law. *Cf. McKennon*, 513 U.S. at 363 (cautioning that "employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist [employment discrimination] claims," though instructing that "invok[ing] the appropriate provisions of the Federal Rules of Civil Procedure will deter most abuses").

Accordingly, the subpoenas would impose an undue burden on Ms. Senseney, non-parties, and the public interest. For that additional reason, each is due to be quashed.

**Conclusion**

For the foregoing reasons, the non-party subpoenas that Defendant intends to serve on former employers should be quashed or modified, and a Protective Order should issue that prevents Defendant from issuing further subpoenas to former employers in the absence of approval from this Court or consent by the parties.

Respectfully submitted, October 2, 2026,

s/ Trent Thompson
Wm. Trent Thompson
NY Bar No. 5232525
Attorney for Plaintiff
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, Alabama 35205
Telephone: (205) 651-7065
Fax: (205) 212-2041
Email: william.thompson@eeoc.gov