IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| PLAINTIFF, | ) | Civil Action No. 1:25cv00288-TBM-RPM |
| v. | ) | |
| BOLLINGER SHIPYARDS, LLC, | ) | |
| DEFENDANT. | ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL RESPONSE TO INTERROGATORY

Pursuant to Rules 26, 33, and 37 of the Federal Rules of Civil Procedure, and for the reasons set forth below, Plaintiff U.S. Equal Employment Opportunity Commission respectfully requests that this Court compel Defendant Bollinger Shipyards, LLC to serve a complete response to an interrogatory that seeks information about "each employee whom Bollinger has placed on leave because of the employee's use of a prescription medication as prescribed between May 1, 2021, and the present."

### I. Background

This case revolves around the Commission's allegation that Bollinger violated the Americans with Disabilities Act (ADA) by placing its employee, Keely Senseney, on unpaid leave upon realizing that she uses a prescription medication to treat a disability. Specifically, Ms. Senseney lives with a disability, opioid dependence, for which she receives treatment, including a prescription medication, from a physician. When Bollinger's managers learned of this, they promptly excluded Ms. Senseney from work.

On January 25, 2024, Ms. Senseney applied to work for Bollinger as a shipfitter at its shipyard in Pascagoula, Mississippi. Bollinger offered Ms. Senseney the position the next day, after assessing her skills as a shipfitter and arranging for her to be physically examined by a local clinic of its choosing, Occupational Health Center (OHC). OHC examined Ms. Senseney and her medical records, then reported to Bollinger that Ms. Senseney could perform the essential job functions of the shipfitter position without accommodation and that Ms. Senseney working as a shipfitter would not present a direct threat to herself or to others.

Ms. Senseney began working for Bollinger as a shipfitter on February 21, 2024. Ms. Senseney identified the medication she takes for opioid dependency in her onboarding paperwork. Ms. Senseney performed her duties in a safe and competent manner while employed by Bollinger. However, on April 12, 2024, Bollinger placed Ms. Senseney on involuntary, unpaid leave because she takes medication for opioid dependency. On April 15, 2024, Ms. Senseney submitted to a second medical examination by OHC at Bollinger's request. OHC again reported to Bollinger that Ms. Senseney could perform the essential job functions of the shipfitter position without accommodation and that Ms. Senseney working as a shipfitter would not present a direct threat to herself or to others. OHC further specified in its report to Bollinger, with respect to the medication that Ms. Senseney is prescribed, that "med records [were] reviewed & patient is compliant with treatment, no side effects reported." As OHC concluded, "Patient . . . cleared to return to regular duty." Nonetheless, Bollinger refused to accept OHC's repeated advice, sought an opinion from another clinic with which it has a close relationship, and has yet to allow Ms. Senseney to return to work.

Bollinger maintains a Medication Disclosure Policy that applies to "all employees working within safety sensitive positions . . . when they are taking or prescribed medications

(safety sensitive) that could impair their ability to safely perform their job duties and/or operate machinery." (Ex. B, Medication Disclosure Policy, Bollinger-000052-53.) The Medication Disclosure Policy defines a "Safety Sensitive Position" as, among other things, any position "that has exposure to the production environment" or "that requires an employee to drive company owned vehicles regardless of the frequency. (*Id.* at -52.) Bollinger's Policy defines a "Safety Sensitive Medication" to mean "[a]ny medication that *can* have the effect of impairing one's ability to perform safety sensitive job duties[,] . . . commonly identified by their side effects such as drowsiness, dizziness, slow reflexes, blurred vision, inability to operate vehicles/machinery, in addition to statements mentioning that individual[s] should monitor how the medication effects them, etc." (*Id.* (emphasis added).) Bollinger's Medication Disclosure Policy, by its own terms, sweeps broadly.

At the outset of this case, the Commission and Bollinger negotiated and jointly moved for entry of a Stipulated Protective Order that contains a separate paragraph protecting "as confidential any Information about any other Bolinger employee's past, present, or future physical or mental health." (ECF No. 21, paragraph 4.)

## II. <u>Standard of Review</u>

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Federal Rule of Civil Procedure 33 provides that a party must respond to each interrogatory "fully in writing." Fed. R.

Civ. P. 33(b)(3).

In general, the discoverability "standard is broad" in employment discrimination cases. *Miller v. Sam Houston State Univ.*, 986 F.3d 880, 891 (5th Cir. 2021); *see also Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir. 1983); Fed. R. Civ. P. 26, advisory committee note to 2015 amendments ("[M]any cases in public policy spheres, such as employment practices, . . . may have importance far beyond the monetary amount involved."). More specifically, the Fifth Circuit has held that "in an EEOC case the discovery scope is extensive." *Trevino*, 701 F.2d at 406 (quoting *Rich v. Martin Marietta Corporation*, 522 F.2d 333, 343 (10th Cir.1975)); *see also Gen. Tel. Co. of the Northwest, Inc., v. EEOC*, 446 U.S. 318, 326 (1980) (noting that the Commission's litigation "is guided by 'the overriding public interest in equal employment opportunity . . . asserted through direct Federal enforcement.'" (quoting 118 Cong. Rec. 4941 (1972))).

## III. <u>Argument</u>

The Commission's lawsuit alleges that Bollinger violated the ADA by placing Ms. Senseney on unpaid leave for her use of a prescription medication for her disability, an allegation of disparate treatment discrimination for which comparator evidence is relevant. *See EEOC v. United Healthcare Servs., Inc.*, 2025 WL 1076824, at *10 (S.D. Ohio Apr. 10, 2025). Indeed, the Fifth Circuit has held that it constitutes an abuse of discretion in an employment discrimination case to deny discovery into comparator evidence. *See Bailey v. KS Mgmt. Servs., L.L.C.*, 35 F.4th 397, 403 (5th Cir. 2022) (noting that a plaintiff can "use this comparator evidence to show disparate treatment"); *see also EEOC v. Cash Depot, Ltd.*, 2022 WL 3644186, at *5 (5th Cir. Aug. 24, 2022) (unpublished) (reversing and remanding where, *inter alia*, the "district court also failed to address whether [defendant] made accommodations for other employees").

Comparator evidence would allow the jury to compare how Bollinger treated Ms. Senseney's medication disclosure with how Bollinger treated disclosures from other employees who use medications with similar side effects to treat a condition other than opioid dependency.[1] Many drugs carry warnings that they may cause drowsiness or impede a person's ability to operate heavy machinery, so a jury will need to know whether Bollinger similarly excluded employees taking those medications from safety sensitive positions.

Moreover, Bollinger has placed its treatment of comparators at issue by asserting as a defense that Ms. Senseney's use of medication constituted a direct threat. Access to comparator evidence would allow the jury to test whether that defense is pretextual. Bollinger's stated position is that it excluded Ms. Senseney from work "because she disclosed that she was prescribed a safety sensitive medication which has adverse side effects that *could* have cause her to be a direct threat to herself or others." (Ex. A, at 3 (Defendant's Response to Interrogatory No. 2) (emphasis added).) Bollinger's written policy states that it may exclude employees from working "safety sensitive positions" while taking any "safety sensitive medication" as broadly defined to include any medication, prescription or not, with "side effects such as drowsiness, dizziness, slow reflexes, blurred vision, inability to operate vehicles/machinery, in addition to statements mentioning that individual[s] should monitor how the medication effects them, etc." (Ex. B, at Bollinger-000052.) Therefore, whether Bollinger excluded employees taking other prescription medications with similar side effects from working safety sensitive positions is directly relevant to whether Bollinger has applied its policy consistently or disparately with respect to Ms. Senseney.

[1] Medications with similar side effects treat other conditions that may be disabilities under the ADA as well as conditions that may not be considered disabilities under the ADA. For example, antihistamines for seasonal allergies may cause drowsiness.

Bollinger has not provided any evidence to support its contention that responding to the interrogatory would be unduly burdensome. Rather, the Policy itself shows that Bollinger has established procedures for tracking employees' medication disclosures that should facilitate compiling the information requested. Indeed, the Policy requires that "[a]ll disclosed medications should be documented on SAF FRM 052 Medication Disclosure Form along with the outcome that was communicated to the employee." (Bollinger-000052, at -53.) Even if Bollinger contends that the Medication Disclosure Policy's procedures and documentation requirements have resulted in the creation over the past few years of a large amount of relevant information responsive to the Commission's interrogatory, that alone would not establish that it is unduly burdensome to retrieve and produce the information.

Bollinger further objects that the interrogatory's tailoring of its request to information about employees placed on leave because of their use of a prescription medication is "overbroad," but the interrogatory's scope is narrower than Bollinger's Medication Disclosure Policy, which makes no distinction between prescription and over-the-counter medication. The Commission has also offered to limit the request to cover only employees who were working in safety-sensitive positions, but Bollinger has declined to compromise. Accordingly, given the broad scope of Bollinger's Medication Disclosure Policy, the interrogatory is not overbroad and is instead narrowly tailored to prescription medications.

Bollinger also objects that the interrogatory is overbroad because it seeks information dating back to May 1, 2021, which covers a period going back three years from when Bollinger placed Ms. Senseney on leave. Comparator evidence is not limited to the precise moment in time when an employer took the action at issue; rather, the jury may consider how an employer treated similarly situated employees over a period of time. *See EEOC v. Exxon Mobil Corp.*, 347

F.R.D. 451, 464 (M.D. La. 2024) ("[T]he Court concludes that the five-year period proposed by the EEOC . . . is an appropriate temporal scope for discovery in this case. The relevant timeframe is case specific, but courts have generally limited discovery of other employee's claims of discrimination to 3 to 5 years.") (internal quotation marks omitted) (collecting cases); *see also Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199-200 (5th Cir. 1992) (finding that "the district court properly considered evidence of the 1980–82 fear-producing actions in determining whether the 1986 actions amounted to sexual harassment and constructive discharge").

Finally, Bollinger objects that the interrogatory "seeks confidential medical information" of other employees. However, Bollinger anticipated that discovery in this action would require the disclosure of such information, which is why Bollinger negotiated and the Court entered a Stipulated Protective Order that contains a separate paragraph protecting "as confidential any Information about any other Bollinger employee's past, present, or future physical or mental health." (ECF No. 21, paragraph 4.) Bollinger's confidentiality objections have therefore been addressed. *Cf. Steffel v. Agilis Eng'g, Inc.*, 2023 WL 11886865, at *2 (D.S.C. Jan. 4, 2023) ("Moreover, regarding Agilis' concerns regarding the confidentiality of the details of other employees' requests for accommodations based on religious beliefs, a consent confidentiality order was recently entered in this case that should address any such concerns."). Even in the absence of such specific protections, an employer cannot claim its employees' privacy rights to shield from scrutiny its own actions with respect to how it responded to those employees' disclosures of disability-related information about their medication usage. *Cf. Scott v. Leavenworth Unified Sch. Dist. No. 453*, 190 F.R.D. 583, 587 (D. Kan. 1999) ("Congress never intended for a defendant charged with violating the ADA to use the ADA's confidentiality

provisions to impede a plaintiff's ability to discover facts that might help the employee establish his/her claims.").

## Conclusion

For the foregoing reasons, Bollinger should be compelled to respond completely to the Commission's interrogatory.

Respectfully submitted, October 2, 2026,

s/ Trent Thompson
Wm. Trent Thompson
NY Bar No. 5232525
Attorney for Plaintiff
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, Alabama 35205
Telephone: (205) 651-7065
Fax: (205) 212-2041
Email: william.thompson@eeoc.gov