IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. 1:25cv288-TBM-RPM |
| BOLLINGER SHIPYARDS, LLC | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Bollinger Shipyards, LLC ( "Bollinger"), who, without waiving any rights, privileges, claims, or defenses to this action, and pursuant to the Federal Rules of Civil Procedure, submit the following Responses to Plaintiff's First Set of Interrogatories propounded on April 13, 2026, subject to the General Objections set forth below and any other applicable objections.

**GENERAL OBJECTIONS**

1. Defendant objects to Plaintiff's Interrogatories to the extent that they impose upon Defendants any obligation not set forth in the Federal Rules of Civil Procedure.

2. Defendant objects to Plaintiff's Interrogatories to the extent that they are overly broad in time and/or scope, vague, argumentative, assume facts not in evidence, unduly burdensome and/or are onerous.

3. Defendant objects to Plaintiff's Interrogatories to the extent that they seek information protected from disclosure by the work-product doctrine and/or the attorney-client/joint defense privilege. To the extent, if any, Plaintiff's Interrogatories are intended to encompass information protected by the attorney-client privilege or the work product doctrine, Defendant objects because that information is simply not discoverable. All of Defendant's responses are subject to this objection, and Defendant asserts these objections with the understanding that they exclude from their answers any protected, non-discoverable information.



EXHIBIT 2

4. Defendant objects to Plaintiff's Interrogatories to the extent that they seek information that is not in Defendants' possession, custody or control.

5. Defendant objects to Plaintiff's Interrogatories to the extent that they impose upon Defendant an unreasonable and unduly burdensome investigation to obtain information that is, or ought to be, in Plaintiff's possession or control.

6. Defendant objects to Plaintiff's Interrogatories to the extent that they call for proprietary and confidential business information.

7. Defendant objects to Plaintiff's Interrogatories to the extent that they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, nor proportional to the needs of the case.

8. Defendant objects to Plaintiff's Interrogatories to the extent that they seek information from persons other than Defendant.

9. Defendant objects to Plaintiff's Interrogatories to the extent that they call for Defendant to make a conclusion of law.

10. Defendant objects to Plaintiff's Interrogatories to the extent that the requested information is confidential and invasive to the privacy interests of nonparties to this litigation.

11. Defendant further objects to Plaintiff's use of terms such as "every," "each," "any" and "all" because such terms are overbroad on their face and it is impossible to represent even after a diligent search, that "every," "each," "any" and "all" information possibly responsive to a Request is included herein.

Subject to each of the foregoing General Objections, and without waiving any objection, reserving its right to answer, and incorporating by reference those General Objections into each specific response below, Defendant responds to Plaintiff's Interrogatories as follows:

**INTERROGATORY NO. 1:**

Identify the pay and benefits, if any, that Charging Party Keely Senseney (Charging Party) received during her employment with Defendant.

**RESPONSE TO INTERROGATORY NO. 1:**

Defendant objects to Interrogatory No. 1 because it is vague and ambiguous. For example, the use of the phrase "pay and benefits, if any" is vague, undefined, and could be subject to multiple interpretations. Defendant also objects to Interrogatory No. 1 to the extent that it seeks information

regarding pay and benefits that Ms. Senseney received from anyone other than Defendant during the time that she was employed by Defendant, as such information is not in the possession, custody, or control of Defendant. Subject to and notwithstanding the foregoing objections, Defendant will produce records related to Ms. Senseney's pay and benefits, in accordance with Federal Rule of Civil Procedure 33(d).

**INTERROGATORY NO. 2:**

State the reason(s) that Defendant placed Charging Party on leave after she disclosed her prescribed use of a synthetic opioid. If Defendant contends that Senseney's workplace performance or conduct were among the reasons why Defendant placed Charging Party on leave, describe each instance of poor performance or misconduct that Defendant contends supports its decision to place Charging Party on leave.

**RESPONSE TO INTERROGATORY NO. 2:**

Keely Senseney was placed on medical leave because she disclosed that she was prescribed a safety sensitive medication which has adverse side effects that could have caused her to be a direct threat to herself or others if she was allowed to continue performing safety sensitive job responsibilities while taking the medication. Ms. Senseney was placed on medical leave so that Defendant could conduct an individualized assessment regarding whether Ms. Senseney was still qualified to perform the essential functions of the position of shipfitter, with or without accommodations, in light of the medications that she disclosed.

**INTERROGATORY NO. 3:**

Identify each employee whom Defendant has placed on leave because of the employee's use of a prescription medication as prescribed between May 1, 2021, and the present. For each such individual, state the individual's name and dates of employment. If any such individual is no

longer employed by Defendant, further state the individual's last known phone number and last known mailing address.

**RESPONSE TO INTERROGATORY NO. 3:**

Defendant objects to Interrogatory No. 3 because it is unduly burdensome. For example, the Interrogatory asks Defendant to search through five years of records for all of its employees in order to identify employees who were allegedly placed on medical leave due to their use of prescription medications. Defendant also objects to this Interrogatory because it is overbroad. For example, the Interrogatory seeks information about individuals who were "placed on leave because of the employee's use of prescription medication" and therefore is not narrowly tailored to seek information about individuals who were prescribed the same or similar medications as that which the Charging Party was prescribed. The Interrogatory is also not narrowly tailored because it seeks information from 2021 to the present, even though Ms. Senseney was not hired by Defendant until 2024, and therefore the information sought is outside of the scope of discovery. Defendant also objects to Interrogatory No. 3 because it seeks confidential medical information regarding employees of Defendant who are not parties to this action and who have not consented to the disclosure of their private medical information.

**INTERROGATORY NO. 4:**

Describe all equal employment opportunity trainings, including trainings on the Americans with Disabilities Act or anti-harassment and anti-retaliation trainings, that Defendant conducted between May 1, 2021, and the present. In doing so, state the dates of each training, the subject of each training, and the name and position of each individual who attended each training.

**RESPONSE TO INTERROGATORY NO. 4:**

Defendant objects to Interrogatory No. 4 because it is overbroad and unduly burdensome in that it seeks information regarding "all equal employment opportunity trainings" that Defendant has conducted for a five-year period and therefore is not narrowly tailored to seek discoverable evidence regarding Plaintiff's claims or Defendant's defenses in this matter. Defendant also objects to this Interrogatory to the extent that it seeks the identities of employees of Defendant who are not parties to this action and therefore raises confidentiality concerns.

Subject to and notwithstanding the foregoing objections, Bollinger conducted a training on the Americans with Disabilities Act and the Rehabilitation Act for various employees on July 24, 2024. Additionally, all Bollinger employees are trained annually on Bollinger's policies, including ethics and EEO policies and postings.

**INTERROGATORY NO. 5:**

Identify by name and job title each individual who participated in Defendant's decision to place Charging Party on leave and state the role each such individual had in that decision.

**RESPONSE TO INTERROGATORY NO. 5:**

Defendant objects to Interrogatory No. 5 because it is ambiguous due to the use of the phrase "participated in" which is subject to multiple interpretations and undefined by Plaintiff. If Plaintiff seeks the identity of the individual who made the decision to place Keely Senseney on medical leave, that decision was ultimately made by Bollinger General Counsel, Rachael Battaglia.

**INTERROGATORY NO. 6:**

Describe Defendant's process for administering, reviewing, or making decisions related to employee disclosures of prescribed use of synthetic opioids. In doing so, identify by name and job title each individual who was involved in administering, reviewing, or making decisions related to

employee disclosures of prescribed use of synthetic opioids and state each such individual's role in this process.

**RESPONSE TO INTERROGATORY NO. 6:**

Defendant objects to Interrogatory No. 6 because it is ambiguous and vague, including because of the use of the phrase "process for administering, reviewing, or making decisions" which is undefined by Plaintiff and subject to multiple interpretations. Defendant also objects to Interrogatory No. 6 because it seeks the identities of non-party employees of Defendant and therefore raises confidentiality concerns.

Subject to and notwithstanding the foregoing objections, employees are required to disclose their use of safety sensitive medications according to Defendant's medication disclosure policy. New hires are required to disclose medications that they are prescribed during orientation. The human resources individuals at the particular work site where the new hire is onboarding review the medication disclosure and then forward it to the safety team for the new hire's specific work site. After the site safety team reviews the details of the disclosure, they submit the disclosure to the human resources employees in Bollinger's operations support department for further review and guidance, if necessary. The operations support department then consults with physicians who specialize in occupational medicine regarding the specifics of the medication disclosed and its potential adverse effects that could cause safety concerns for the new hire and those around them. The new hire may be referred to a physician who specializes in occupational medicine for a fitness-for-duty examination depending on the details of their disclosure. After the fitness-for-duty examination, the physician who specializes in occupational medicine makes a recommendation to Bollinger's operations support department regarding whether the new hire is qualified to perform the essential functions of the job for which they were hired, with or without accommodation. This

recommendation could include recommended restrictions, such as a restriction from performing safety sensitive job functions while taking their prescribed medication. Bollinger's operations support department then conducts an individualized assessment regarding whether the new hire is qualified to perform the role for which they were hired. This assessment includes but is not limited to analysis of the position that the new hire was hired for, the essential functions of that position, the medication that they disclosed, and the physician's recommendations. The Bollinger operations support department then makes an employment decision regarding whether the new hire can safely begin working, according to the individualized assessment.

If an existing employee is prescribed a new safety sensitive medication, they are required to complete a medication disclosure form and submit the form to the safety team for their specific work site. The site-based safety team then forwards the medication disclosure to the human resources employees in Bollinger's operations support department, if necessary. The operations support department then corresponds with physicians who specialize in occupational medicine regarding the specifics of the medication disclosed and its potential adverse effects that could cause safety concerns for the employee and those around them. The employee may be placed on medical leave and referred to a physician who specializes in occupational medicine for a fitness-for-duty examination, depending on the details of their disclosure. After the fitness-for-duty examination, the physician makes a recommendation to Bollinger's operations support department regarding whether the employee is still qualified to perform the essential functions of their job, with or without accommodation. This recommendation could include recommended restrictions, such as a restriction from performing safety sensitive job functions while taking the prescribed medication. Bollinger's operations support department then conducts an individualized assessment regarding whether the employee is still qualified to perform their role. This assessment includes but is not

limited to analysis of the employee's position, the essential functions of that position, the medication that the employee disclosed, and the occupational medicine provider's recommendations, including any suggested restrictions. The Bollinger operations support department then makes an employment decision regarding whether the employee may return to work, according to the individualized assessment.

**INTERROGATORY NO. 7:**

Identify any parent or subsidiary corporation of Defendant. Describe the relationship between Defendant and each such parent or subsidiary corporation.

**RESPONSE TO INTERROGATORY NO. 7:**

Defendant objects to Interrogatory No. 7 because it is not reasonably tailored to seek information that is discoverable in this case because it is not relevant to Plaintiff's Claims or Defendant's defenses in this matter. Defendant's corporate structure is not within the scope of discovery.

**INTERROGATORY NO. 8:**

State Defendant's income, net worth, and profit for calendar years 2021-2026.

**RESPONSE TO INTERROGATORY NO. 8:**

Defendant objects to Interrogatory No. 8 because it is not reasonably tailored to seek information that is discoverable in this case. Defendant's income, net worth, and profit, is not relevant to Plaintiff's claims nor Defendant's defenses in this matter. And even if this information did have some tenuous relevance, which is explicitly denied, it is not proportional to the needs of the instant case, which does not concern Defendant's income, net work, or profit. Defendant also objects to this Interrogatory because it is overbroad, in that it seeks Defendant's financial information from 2021-2026, even though Ms. Senseney was not hired by Defendant until 2024.

**INTERROGATORY NO. 9:**

Identify each person who answered these Interrogatories, supplied information, or assisted in the preparation of the answers and specify for which Interrogatory each identified person answered or supplied information. For each person identified, state what part they played in preparation of the answer.

**RESPONSE TO INTERROGATORY NO. 9:**

Defendant objects to Interrogatory No. 9 on the basis of attorney-client privilege and the attorney work product doctrine.

**INTERROGATORY NO. 10:**

State all facts supporting Defendant's contention that actions of Charging Party were a proximate or superseding cause of any damages Charging Party may have sustained.

**RESPONSE TO INTERROGATORY NO. 10:**

Defendant objects to Interrogatory No. 10 to the extent that it seeks a legal conclusion. Subject to and notwithstanding the foregoing objection, Defendant submits that the Charging Party may be the cause of her own damages to the extent that she did not mitigate any alleged damages that she allegedly incurred.

**INTERROGATORY NO. 11:**

State all facts supporting Defendant's contention that actions of a third party for whom Defendant is not responsible were a proximate or superseding cause of any damages Charging Party may have sustained.

**RESPONSE TO INTERROGATORY NO. 11:**

Defendant objects to Interrogatory No. 11 because it is vague, confusing, and seems to seek a legal conclusion. Defendant may supplement its response to this Interrogatory upon clarification from Plaintiff regarding what information this Interrogatory is seeking.

**INTERROGATORY NO. 12:**

State all facts supporting Defendant's contention that all conditions precedent to Plaintiff's initiation of this lawsuit were not fulfilled.

**RESPONSE TO INTERROGATORY NO. 12:**

Defendant objects to Interrogatory No. 12 as vague and ambiguous because the phrase "conditions precedent" is undefined by Plaintiff and subject to multiple interpretations. Subject to and notwithstanding the foregoing objection, it is Bollinger's position that the EEOC did not conciliate in good faith with Bollinger. This position is based upon the fact that when Bollinger proposed a two-party resolution between the EEOC and Bollinger during the conciliation process, the EEOC refused to consider the proposed resolution.

Respectfully submitted,

**PHELPS DUNBAR LLP**

BY: /s/ David Korn

Mark Fijman (MS Bar #99153)
Adam Harris (MS Bar #102955)
David Korn (Admitted Pro Hac Vice)
Caroline Perlis (Admitted Pro Hac Vice)
Canal Place | 365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504 566 1311
Facsimile: 504 568 9130
Email: fijmanm@phelps.com

adam.harris@phelps.com
david.korn@phelps.com
caroline.perlis@phelps.com

**ATTORNEY FOR DEFENDANT BOLLINGER SHIPYARDS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that, on May 13, 2026, I served the foregoing on Plaintiff's counsel via email.

*/s/ David Korn*
David Korn