IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| PLAINTIFF, | ) | |
| | ) | Civil Action No. 1:25cv00288-TBM-RPM |
| v. | ) | |
| BOLLINGER SHIPYARDS, LLC, | ) | |
| DEFENDANT. | ) | |

# PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY

Plaintiff U.S. Equal Employment Opportunity Commission respectfully files this memorandum in opposition to Defendant's Motion to Compel Discovery.

## I. Preliminary Statement

This case is about whether Defendant Bollinger Shipyards, LLC discriminated against Keely Senseney because of her use of prescription medication for her disability during the few months in 2024 when she worked for Bollinger.

Defendant's motion goes beyond the text of its already overbroad discovery requests and seeks the disclosure of records from, *inter alia*, any "medical provider," "counselor," or "clergy member" who has "treated, examined, or counseled" Ms. Senseney "since she was 'prescribed an opioid and developed opioid dependency.'" (ECF No. 27, at 1, 6.)[1] Bollinger maintains the "full scope" of these demands even though the Commission has already produced to Defendant the

[1] Defendant's discovery requests sought such information since April 1, 2016, but Defendant expanded the period to January 1, 2014 while conferring with the Commission, and Defendant's motion now seeks records going even farther back in time.

relevant medical records, provided details about the relevant medical history in response to interrogatories, and facilitated Ms. Senseney's authorization for Bollinger to obtain additional medical records.

Specifically, Bollinger has Ms. Senseney's signed HIPAA authorization for medical records from her primary medical provider going back to January 1, 2019, a period of nearly eight years. This extended period ranges more than five years prior to the date Bollinger hired Ms. Senseney, while also giving Bollinger three years of post-separation discovery.[2] The Commission repeatedly offered to facilitate such an authorization while maintaining its objection to the "full scope" of Bollinger's shifting and invasive demands, yet Bollinger repeatedly declined. As it stands, Ms. Senseney has authorized Bollinger to obtain nearly eight years of records from the medical provider that prescribes the medication at issue in this litigation. Bollinger cannot show that further disclosures would be proportionate to the needs of this case. The additional information Bollinger seeks—the identity of every "hospital, clinic, rehabilitation facility, institution, medical doctor, osteopathic doctor, health care provider, psychologist, psychiatrist, counselor or clergy member" that has "treated, examined, or counseled" Ms. Senseney stretching back more than a decade, releases to obtain any records such entities may possess, and a list of every "prescription and non-prescription drug" Ms. Senseney has taken or been prescribed during the same period, *see* Doc. 27 at 3-4—is a fishing expedition into

[2] Ms. Senseney has also specifically authorized Bollinger to obtain relevant medical records about her from the occupational health clinics that Bollinger retained to examine her in 2024. The Commission does not agree that examinations that those clinics conducted of Ms. Senseney for other positions at other employers, to the extent any exist, are relevant to this action. To be clear, there is neither any indication that other such records exist, nor that the clinics referenced other such records when examining Ms. Senseney for Bollinger.

information Bollinger never sought or considered when making the employment decision at issue. As explained further below, Defendant's Motion to Compel is therefore due to be denied.

## II. Facts

### A. Case Background

This case revolves around the Commission's allegation that Bollinger violated the Americans with Disabilities Act (ADA) by placing Ms. Senseney on unpaid leave after realizing that she uses a prescription medication to treat a disability. (Complaint, ECF No. 1, at 22-26.) Specifically, Ms. Senseney lives with a disability, opioid dependence, for which she receives treatment, including a prescription medication, from a physician. (*Id.* at 12-14, 16-17.) When Bollinger's managers learned of this, they promptly excluded Ms. Senseney from work. (*Id.* at 23.)

On January 25, 2024, Ms. Senseney applied to work for Bollinger as a shipfitter at its shipyard in Pascagoula, Mississippi. Bollinger offered Ms. Senseney the position the next day, after assessing her skills as a shipfitter and arranging for her to be physically examined by a local clinic of its choosing, Occupational Health Center (OHC). OHC examined Ms. Senseney and her medical records, then reported to Bollinger that Ms. Senseney could perform the essential job functions of the shipfitter position without accommodation and that Ms. Senseney working as a shipfitter would not present a direct threat to herself or to others.

Ms. Senseney began working for Bollinger as a shipfitter on February 21, 2024. (*Id.* at 19.) Ms. Senseney identified the medication she takes for opioid dependency in her onboarding paperwork. Ms. Senseney performed her duties in a safe and competent manner while employed by Bollinger. However, on April 12, 2024, Bollinger placed Ms. Senseney on involuntary, unpaid leave because she takes medication for opioid dependency. (*Id.* at 23.) On April 15, 2024, Ms.

Senseney submitted to a second medical examination by OHC at Bollinger's request. (*Id.* at 27.) OHC again reported to Bollinger that Ms. Senseney could perform the essential job functions of the shipfitter position without accommodation and that Ms. Senseney working as a shipfitter would not present a direct threat to herself or to others. (*Id.* at 28.) OHC further specified in its report to Bollinger, with respect to the medication that Ms. Senseney is prescribed, that "med records [were] reviewed & patient is compliant with treatment, no side effects reported." As OHC concluded, "Patient . . . cleared to return to regular duty."

Nonetheless, Bollinger refused to accept OHC's repeated advice and sought an additional "Safety Sensitive Medication Review" from another clinic with which it has a close relationship, Family Medical Services ("FMS"). (*Id.* at 29-30.) On July 18, 2024, FMS provided Bollinger with a "diagnosis" of "Medication concerns" and reported that Ms. Senseney should have a "Restriction from any safety sensitive duties." (*Id.* at 31-32.) Bollinger has yet to allow Ms. Senseney to return to her job. (*Id.* at 34.)

### B. **Defendant's Broad Requests for Ms. Senseney's "Healthcare" Information**

On February 20, 2026, the Commission produced materials received during the Commission's administrative investigation, as well as materials collected during the litigation from Ms. Senseney's email account. This production included records from Dr. Martin's office summarizing Ms. Senseney's seven visits between November 2023 through June 2024, which covers the entire period when Ms. Senseney was hired for and successfully performed her job duties at Bollinger.

On April 13, 2026, Bollinger served Defendant's First Set of Interrogatories and Requests for Production of Documents. As relevant here, Bollinger demanded in Interrogatory No. 8 that the Commission "Identify the name and address of each and every hospital, clinic, rehabilitation

facility, institution, medical doctor, osteopathic doctor, health care provider, psychologist, psychiatrist, counselor or clergy member (collectively, "healthcare providers") by whom the Charging Party was treated, examined, or counseled from April 1, 2016 to the present." (ECF No. 27-4, at 6.) And, in Interrogatory No. 11, Bollinger demanded "each prescription and non-prescription drug" Ms. Senseney "has taken or was prescribed/advised to take . . . since April 1, 2016," including six-sub parts seeking detailed information about each such "drug." (ECF No. 27-4, at 8.)

Bollinger also demanded in Request for Production No. 4 "any and all copies of medical and healthcare records, reports, and other medical documentation of whatsoever kind or nature, relating to medical or psychological treatment of services received by Charging Party from April 1, 2016 to the present" or "medical records release authorization forms for each medical healthcare provider or counselor who provided service to Plaintiff during that time period." (Exhibit 1, Plaintiff's Responses to Defendant's First Set of Requests for Production of Documents, at 2-3) Finally, in Request for Production No. 13, Bollinger asked the Commission to have Ms. Senseney sign and return eight separate records release forms on topics ranging from medical records to tax and cell phone records, including a draft HIPAA authorization not limited in time. (ECF No. 27-3. at 12, 14.)

The Commission served its responses on May 13, 2026. The Commission objected that each request was "overly broad, unduly burdensome, and disproportionate to the needs of the case." (ECF No. 27-4, at 2.) Specifically, the Commission objected that Interrogatory No. 8 "would require Plaintiff to ascertain and identify each and every nurse, pharmacist, EMT, or pastor that she interacted with in the last decade" and "go well beyond the issues relevant to this case." (*Id.* at 2-3.) The Commission objected similarly to Interrogatory No. 11, noting that it

"would require Plaintiff to ascertain and identity minute details regarding every medication including over-the-counter medications for everyday ailments that Charging Party has consumed in the past ten years." (*Id.* at 5.) Nonetheless, the Commission specifically identified the name, dosage, frequency, and prescriber of the medication that Ms. Senseney takes for opioid dependency. (*Id.*) The Commission objected to Request for Production No. 4 because "its terms could require Plaintiff to ascertain and identify any health services or products that Charging Party has used for the last decade up to and including receipts for over-the-counter medications and bandages." (Exhibit 1, at 3.) Nonetheless, the Commission answered that "Charging Party has been treated by James B. Martin for her opioid dependency during the relevant time period." (ECF No. 27-4, at 3.) Finally, the Commission objected that requiring Ms. Senseney to execute eight separate forms authorizing the release of sensitive private information, including overbroad HIPAA authorizations "is beyond the scope of discovery in that it asks Plaintiff to create documents that do not exist." (Exhibit 1, at 7.)

On June 18, 2026, the Commission's counsel communicated that it would agree to recommend to Ms. Senseney that she execute a HIPAA authorization "limited to records created since January 1, 2023, which is more than a year before Ms. Senseney applied to work at Bollinger." (ECF No. 27-5.) On July 1, 2026, Bollinger "propose[d] a relevant time period of January 25, 2014 to the present, which encompasses 10 years prior to Senseney's application for employment with Bollinger." (*Id.*) Rather than narrowing the dispute, Bollinger's July 1, 2026 proposal thus sought more than an additional two years of records on top of the period sought by Bollinger's discovery requests.

On August 5, 2026, the Commission's counsel communicated to Bollinger's counsel that it "still cannot agree to provide—nor to have Ms. Senseney sign releases authorizing the

disclosure of—all of Ms. Senseney's sensitive medical information, including every prescription or OTC medication taken and every nurse, physician, or clergy member consulted since January 25, 2014." (ECF No. 27-6, at 1.) Nonetheless, the Commission supplemented its response to Interrogatory No. 8 to make clear that "Dr. Martin has been Charging Party's primary care physician since January 1, 2023" and that "Charging Party has exclusively seen Dr. Martin for the treatment of her opioid dependency and the prescription" at issue during that period. (*Id.* at 3.) The Commission also supplemented its response to Interrogatory No. 11, in which the Commission had already disclosed the dosage and frequency of the medication that Ms. Senseney takes for opioid dependency, to clarify that Ms. Senseney has taken the medication "for more than ten years." (*Id.* at 4.) As the Commission's supplementary answer further explained, Charging Party was prescribed an opioid and developed opioid dependency" as a result of "giving birth to one of her children." (*Id.*)

On August 18, 2026, the parties jointly requested a telephonic conference to discuss this discovery dispute, among others.

On September 1, 2026, Bollinger's counsel communicated that "Defendant is maintaining the full scope of its requests for the medical information sought by Interrogatory 8 and RFP 4." (Exhibit 2, September 1, 2026, Email from Perlis to Thompson, at 1.)

On September 7, 2026, the parties jointly updated the Court about this dispute:

> With respect to Defendant's request that the Commission produce a list of Ms. Senseney's medical providers for the timeframe of January 25, 2014 to the present and HIPAA authorizations for each of the providers identified, the Parties remain at an impasse. Defendant offered to conduct discovery of Ms. Senseney's medical records in stages, such that the Commission could first produce the identities of Ms. Senseney's medical providers, as defined in Defendant's Interrogatory No. 8, for the timeframe requested, and then the Parties could discuss possibly narrowing the HIPAA authorizations requested depending upon the nature of the providers identified. However, the Commission stated that it was unable to agree that Defendant has the right to know "the name and address of

> each and every hospital, clinic, rehabilitation facility, institution, medical doctor, osteopathic doctor, health care provider, psychologist, psychiatrist, counselor or clergy member . . . by whom the Charging Party was treated, examined, or counseled from April 1, 2016 to the present." (Defendant's Interrogatory No. 8). The Commission proposed phased discovery starting with a more limited time period and more limited subset of providers, but Defendant stated that it was unable to agree and was "maintaining the full scope of its request."

(Exhibit 3, September 7, 2026, Email from Perlis to Chambers, at 1.)[3]

On September 22, 2026, Bollinger's counsel sent the Commission proposed HIPAA authorizations for records held by OHC and FMS. Later that day, the Commission's counsel responded that the "draft HIPAA authorizations do not reflect the limitations we discussed during yesterday's conference," in that the parties' counsel "discussed that the releases would be limited to the examinations that these clinics conducted of Ms. Senseney for Bollinger." (ECF No. 27-8, at 3.) The Commission's counsel also objected that "it seems unduly broad to ask Ms. Senseney to sign authorizations that specifically encompass psychotherapy, sexually transmitted diseases, and hepatitis, HIV, and sickle cell anemia." (*Id.*) On September 23, 2026, Bollinger's counsel responded that Bollinger would "limit[] discovery of Ms. Senseney's records from OHC and FMS to non-psychotherapy records" but maintained "that all records that OHC and FMS have in their possession regarding Ms. Senseney are within the scope of discovery in this case." (*Id.* at 2.)

On October 2, 2026, prior to Bollinger's motion to compel, the Commission provided Bollinger HIPAA authorizations signed by Ms. Senseney that cover records from her primary medical provider since January 1, 2019, as well as records from the examinations that OHC and

---

[3] The Commission's counsel sought to narrow the scope of this dispute during meet-and-confer discussions and repeatedly informed Bollinger's counsel that reasonable inquiries had been made of Ms. Senseney and that the Commission's understanding is that Ms. Senseney has not received medical care from any psychologist, psychiatrist, counselor, or clergy member during the periods covered by Bollinger's requests.

FMS conducted for Bollinger. (Exhibit 4, October 2, 2026 Email from Thompson to Perlis, at 1, 13-18.)

## III. Standard of Review

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Under Federal Rule of Civil Procedure 26(b)(2)(C), a "court must limit the frequency or extent of discovery" if "the proposed discovery is outside the scope permitted" or "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Furthermore, discovery may be limited "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

## IV. Argument

The Commission does not dispute that some medical information is relevant to this action. However, the Commission disputes that the "full scope" of Bollinger's requests, and the shifting time periods for which Bollinger seeks such discovery, are relevant or proportionate.

This case is about whether Defendant unlawfully discriminated against Ms. Senseney by placing her on unpaid leave because she was taking medication prescribed for opioid dependency during the few months in 2024 when she was employed by Defendant. Defendant has articulated no compelling basis to justify the identification and production of records from every "healthcare

provider" that Ms. Senseney has seen since "April 1, 2016," (ECF No. 27-3, at 2-3), or from "January 25, 2014 to the present," (Exhibit 3, at 1), or as Bollinger now asks the Court, "since she was prescribed an opioid and developed an opioid dependency." (Exhibit No. 27, at 17); *see also EEOC v. L-3 Communications Integrated Systems*, *LP*, 2018 WL 3548870, at *3 (N.D. Tex. July 24, 2018) (limiting medical records release in ADA case to the date from which the individual started working for the employer to the present).

The Commission has already provided Bollinger with medical records from the relevant time period and authorizations signed by Ms. Senseney permitting the release of her records from three separate providers dating back as many as five years before she started work at Bollinger. Specifically, in addition to authorizing the disclosure of records from the occupation health clinics that examined her for Bollinger in 2024, Ms. Senseney has authorized the release of nearly eight years of medical records from her primary provider, who prescribes Ms. Senseney the medication that she takes for opioid dependency. The additional discovery Bollinger seeks would be needlessly cumulative, unduly burdensome, and not proportionate to the needs of the case.

Bollinger has identified no basis for the relevance of information from the time Ms. Senseney developed her disability. Here, there is no indication that the circumstances of Ms. Senseney's labor and delivery of her child have any relevance to this action, except that they led to the disability that the Commission contends caused Bollinger to discriminate against her many years later. That is not enough to justify a fishing expedition through sensitive medical information dating back 10, 12, or even more years. Tellingly, although "sexually transmitted diseases, hepatitis, HIV . . . , and sickle cell anemia" have no relation to the issues in this case, Bollinger continues to insist specifically on the release of records regarding such conditions, to the extent they even exist. (*See* ECF No. 27-3, at 7; ECF No. 27-8, at 2 ("You will notice that the scope of

the non-psychotherapy record authorizations is unchanged.”).)[4] Bollinger speculates that “records from any medical provider who could have been prescribing Ms. Senseney opioids or synthetic opioids is relevant to her disability.” (ECF No. 27, at 15.) However, the records to which Bollinger already has access from the person who prescribed Ms. Senseney’s opioid medication during the relevant period, Dr. Martin, show that he regularly tested Ms. Senseney’s urine and found only positive results for her prescribed medications. Bollinger may pursue and test its theory by obtaining medical records from Dr. Martin since January 1, 2019, as Ms. Senseney has authorized. Defendant has offered no justification for broader discovery. This is not a case like *Brister v. Crete Carrier Corporation*, where the plaintiffs had “raised no objection to the time period” requested for medical evidence that might be relevant to determining both personal injuries and mental or emotional distress damages arising from a car crash. 2026 WL 1397055, at *1, *3 (S.D. Miss. May 19, 2026). The Commission has raised multiple objections to the expansive, shifting time periods that Bollinger has proposed for its examination of Ms. Senseney’s medical history. Finally, the Commission’s counsel sought to narrow the scope of this dispute during meet-and-confer discussions and repeatedly informed Bollinger’s counsel that reasonable inquiries had been made of Ms. Senseney and that the Commission’s understanding is that Ms. Senseney has not received medical care from any psychologist, psychiatrist, counselor, or clergy member during the periods covered by Bollinger’s requests.

Bollinger also contends that the Commission’s expert witness has placed over ten years of Ms. Senseney’s medical records at issue. However, the expert witness’s opinion is not based on

---

[4] Despite the manifest overbreadth of seeking any records that may exist for such irrelevant conditions, for the sake of compromise, Plaintiff retained Bollinger’s requested language in the three HIPAA authorizations that Ms. Senseney executed. Plaintiff maintains that such conditions should be omitted from any additional disclosures or releases the Court may order.

ten years of medical records. Rather, as Dr. Brady's report makes clear, she relied on an interview of Ms. Senseney and the same records previously produced to Bollinger nearly eight months ago. This is not a case like *Hinckley v. City of Brandon*, where the court's decision to permit broad medical records discovery flowed out of its observation that the claimant's expert witness intended to testify about *his own* treatment of the claimant over a seven-year period. *See* 2026 WL 1454143 at *3. Dr. Brady has never treated Ms. Senseney, so she has access to no records beyond those the Commission provided to her and produced to Bollinger. Nor has the Commission's expert taken the position that a patient must take a medication for ten years before a physician considers their treatment stable. The medical records from Dr. Martin since January 1, 2019, which Ms. Senseney has already authorized Bollinger to obtain, should be more than sufficient to permit Bollinger to explore Ms. Senseney's response to the medication before, during, and after her employment at Bollinger.

Finally, Defendant's discovery requests have broadly defined "healthcare providers" to include any "counselor or clergy member." (ECF No. 27-3, at 2.) Defendant has articulated no basis to believe that Ms. Senseney has had any relevant communications with any counselor or clergy member. Moreover, under Mississippi law, "[a] person has a privilege to refuse to disclose and to prevent another from disclosing a confidential communication by the person to a clergyman in his professional character as spiritual adviser." Miss. Code § 13-1-22(2). This Court should not permit Bollinger to invade the sensitive relationship between a penitent and their clergy by deeming clergy to be "healthcare providers" and then pursuing the thinnest of speculations that the individual *might* have discussed her physical or mental health with her pastor. In this regard, Bollinger's discovery requests are particularly irrelevant, unduly broad, and not proportionate to the needs of the case.

## V. Defendant's Request for Attorney's Fees Should Be Denied.

Even if this Court grants Defendant's motion, attorney's fees are not appropriate in this case. Such a fee award is not appropriate where "the opposing party's nondisclosure, response, or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(A). A party has "substantial justification" when it has a "reasonable basis in both law and fact such that there is a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action." *Dionisio v. Southern Financial Systems, Inc.*, Civil Action No. 5:21-cv-00068-DCB-LGI, 2022 WL 2825827, at *9 (S.D. Miss. May 11, 2022) (citation modified) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (construing Fed. R. Civ. P. 37(a)(5)(A)).

Here, the Commission had substantial justification for opposing the discovery requests at issue. As written, Bollinger's requests asked for overbroad, vaguely defined categories of documents and information. Despite the Commission's repeated attempts to find a reasonable compromise, Bollinger ultimately insisted on "maintaining the full scope of its requests." The Commission's efforts have been good-faith attempts to clarify and appropriately limit these sweeping demands while protecting Ms. Senseney's privacy interests against a fishing expedition into her entire medical history for more than a decade. Courts within the Fifth Circuit have found such protective efforts to be substantially justified in the face of unduly expansive requests. *See Blades v. Martin Marietta Materials, Inc.*, No. 2:24-CV-00055-AM-MHW, 2025 WL 2684370, at *3 (W.D. Tex. July 25, 2025) (denying fees where the non-moving party's "objections and subsequent motions explaining their position indicate[d] that they were attempting to narrow the [moving party's] discovery requests—rather than completely resist them"); *see also Hardy v. Nissan N. Am., Inc.*, No. 3:19-cv-838-TSL-RPM, 2021 WL 6754527, at *2 (S.D. Miss. Feb. 5, 2021) (granting motion to compel in part but denying award of fees where the discovery requests

at issue "were very often vague, overbroad, and required guesswork to understand"). The Commission respectfully submits that its continued objection to the "full scope" of Defendant's request for identification of and releases to obtain records from every "healthcare provider," broadly defined to include every form of medical professional, counselors, and even clergy, is substantially justified in light of the disclosures and releases the Commission has already provided. *See* Fed. R. Civ. P. 37(a)(5)(A)(ii). As the Commission has acted in good faith and with substantial justification, an award of attorney's fees would be inappropriate.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion to Compel Discovery should be denied.

Respectfully submitted, October 16, 2026,

s/ Trent Thompson
Wm. Trent Thompson
NY Bar No. 5232525
Trial Attorney
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, Alabama 35205
Telephone: (205) 651-7065
Fax: (205) 212-2041
Email: william.thompson@eeoc.gov

Benjamin G. Cain
DC Bar No. 1046636'
Assistant Regional Attorney
Equal Employment Opportunity Commission
Jackson Area Office
100 West Capitol Street, Suite 338
Jackson, MS 39269
Telephone: (769) 487-6907
Fax: (601) 714-2202
Email: benjamin.g.cain@eeoc.gov