IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| PLAINTIFF, | ) | Civil Action No. 1:25cv00288-TBM-RPM |
| v. | ) | |
| BOLLINGER SHIPYARDS, LLC, | ) | **OPPOSED IN PART** |
| DEFENDANT. | ) | |

# PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION TO CONSOLIDATE CASES

Plaintiff U.S. Equal Employment Opportunity Commission respectfully files this memorandum in support of its Motion to Consolidate Cases. Consolidation will yield one clear answer to the common legal questions at issue, avoid duplicative discovery and inconsistent outcomes for six individuals who suffered the same harm, and promote judicial economy through one course of discovery and a single trial.

Plaintiff and Defendant have conferred, confirmed that the same counsel will represent the parties in both actions, and agreed that consolidated discovery would be appropriate and efficient.[1] Defendants oppose only Plaintiff's request for full consolidation, including consolidation of post-discovery proceedings such as dispositive motions and trial.

[1] The parties propose setting a date in summer 2027 by which all discovery for both matters must be completed.

## I. Facts

The Commission filed this action ("Bollinger I") in September 2025, alleging that Defendant Bollinger Shipyards, LLC has violated the Americans with Disabilities Act (ADA) because it "continues to exclude Charging Party[2] from work because she still takes her medication to treat her opioid dependency." (Complaint (ECF No. 1), ¶ 34.) On September 30, 2026, the Commission filed a second action ("Bollinger II") against Defendant Bollinger Shipyards, LLC and its subsidiary, Bollinger Mississippi Shipbuilding, LLC. (Complaint (ECF No. 1), Civ. Action No. 1:26-cv-00284-HSO-BWR). The second action alleges that each Defendant has violated the ADA by "rescind[ing] its offers of employment to Charging Parties[3] because they were prescribed medications related to their disability or disabilities." (*See* Bollinger II Complaint, ¶¶ 29-30). The Commission alleges that these actions arise from Defendants' application of a common Medication Disclosure Policy.

Defendants have implemented and enforce a Medication Disclosure Policy that applies to "all employees working within safety sensitive positions . . . when they are taking or prescribed medications (safety sensitive) that could impair their ability to safely perform their job duties and/or operate machinery." (Ex. A, Medication Disclosure Policy, Bollinger-000052-53.) The Medication Disclosure Policy defines a "Safety Sensitive Position" as, among other things, any position "that has exposure to the production environment" or "that requires an employee to drive company owned vehicles regardless of the frequency." (*Id.* at 52.) Bollinger's Policy defines a "Safety Sensitive Medication" to mean "[a]ny medication that *can* have the effect of impairing one's ability to perform safety sensitive job duties[,] . . . commonly identified by their side effects

[2] The Charging Party in Bollinger I is Keeley Senseney.
[3] The Charging Parties in Bollinger II are Jason Tolbert, Anthony Parker, Matthew Lambert, Ali Dahar and Danielle Reynolds.

such as drowsiness, dizziness, slow reflexes, blurred vision, inability to operate vehicles/machinery, in addition to statements mentioning that individual[s] should monitor how the medication effects [sic] them, etc." (*Id.* (emphasis added)).

Both Bollinger I and Bollinger II allege that Defendant(s) excluded people with disabilities from employment at their shipyard in Pascagoula, Mississippi. Both actions involve individuals working for Defendant(s) or whom Defendant(s) made an offer to work in positions that Defendant(s) considered safety sensitive. Both actions allege that Defendant(s) refused to employ people because they were taking prescription medication for their disability. In each case, Defendant referred the employee or applicants to Occupation Health Center ("OHC") for examination. (*See* Bollinger I Complaint, ¶¶ 27-29; Bollinger II Complaint, ¶¶ 22, 25-30.) Plaintiff alleges that Defendant(s) terminated these individuals' employment or rescinded their job offers without assessing whether their prescription medications actually caused them any side effects that made them unable to safely work. And, in each case, Bolliger is expected to mount similar defenses. Discovery in Bollinger I is ongoing, the parties are litigating discovery issues that will likely be equally applicable in Bollinger II, and no depositions have yet occurred.

## II. <u>Legal Standard</u>

Federal Rule of Civil Procedure 42 permits consolidation when "actions before the court involve a common question of law or fact." Fed. R. Civ. P. 42(a). Under Rule 42, a court may "join for hearing or trial any or all matters at issue in the actions," "consolidate the actions," or "issue any other orders to avoid unnecessary cost or delay." *Id.* The Fifth Circuit "urges district judges 'to make good use of Rule 42(a) in order to expedite trial and eliminate unnecessary repetition and confusion,' even when a party opposes consolidation." *Eriakha v. Univ. of Miss.*, --- F.4th ---, 2026 WL 2651073, at *9 (5th Cir. Sept. 9, 2026) (affirming consolidation where "actions were filed in

the same court, arose from overlapping facts, asserted similar claims against many of the same defendants, and generated similar motions"); *see also Attala Hydratan Gas, Inc. v. Lowry Tims Co.*, 41 F.R.D. 164, 165 (N.D. Miss. 1966) (finding that Rule 42 "is designed and intended to encourage the consolidation of actions and the court . . . should allow this remedy as a matter of convenience and economy whenever it is reasonable under the circumstances to do so") (internal citations omitted).

## III. Argument

The Southern District of Mississippi has articulated "a variety of factors" relevant to the exercise of its discretion to consolidate cases, including:

> (1) whether the actions are pending before the same court; (2) whether common parties are involved in the cases (3) whether there are common questions of law and/or fact, (4) whether there is a risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, (5) whether consolidation will conserve judicial resources, (6) whether consolidation will result in an unfair advantage, (7) whether consolidation will reduce the time for resolving the cases, and (8) whether consolidation will reduce the cost of trying the cases separately.

*United States v. Mississippi*, No. 3:10-CV-153-HTW-LRA, 2017 WL 1086234, at *2 (S.D. Miss. Mar. 19, 2017) (collecting cases). All eight factors weigh in favor of consolidation of the EEOC's two suits against Bollinger.

### A. Both Cases Involve the Same Parties and Court.

Bollinger I and Bollinger II are both pending in the Southern District of Mississippi, Southern Division, and involve the same parties, which "weighs in favor of consolidation." *See Hawkins v. Cypress Point Apartments, LLC*, No. 3:19-cv-00939-KHJ-LGI, 2021 U.S. Dist. LEXIS 252885, at *4-5 (S.D. Miss. Feb. 9, 2021) (granting motion to consolidate two cases that were both pending in the same district court before different judges where "defendants [were] common to both cases and ha[d] an interest in the outcome of both cases"). Both actions were filed by a

common Plaintiff, the EEOC, against a common defendant, Bollinger Shipbuilding, LLC.[4] And both actions concern charges of disability discrimination filed by employees or applicants for employment at the same shipyard in Pascagoula, Mississippi, which the EEOC contends arose from application of the same Medication Disclosure Policy.

**B. <u>Both Cases Involve Identical Questions of Law.</u>**

Both cases allege that Bollinger denied employment to individuals based on their actual disability, perceived disability, or record of having a record of disability, and both cases allege that that Bollinger maintained a qualification standard—denial of employment based on use of prescription medication—that unlawfully screened out individuals with disabilities. Although all six Charging Parties did not take the same medication, Bollinger denied all of them employment in jobs it deemed "safety sensitive" based on the same medication policy. That some Charging Parties took different medications is no basis to forgo the efficiencies of consolidation—"[t]he legal issues presented by the two cases are so similar that it outweighs whatever slight variance there may be in the facts." *Hawkins*, 2021 U.S. Dist. LEXIS 252885, at *5.

**C. <u>Both Cases Involve Common Facts.</u>**

The cases share many key facts in common. Each Charging Party sought employment at Bollinger's Pascagoula, Mississippi shipyard. To work at the shipyard, Bollinger required each Charging Party to undergo a medical exam at OHC. The same nurse, Cyrena Muffley, conducted each of those medical exams. Each Charging Party disclosed to OHC that he or she took a

---

[4] Bollinger II also names as defendant Bollinger Mississippi Shipbuilding, LLC, a subsidiary of Bollinger Shipbuilding, LLC that the Bollinger entities have indicated was the direct employer of the Bollinger II Charging Parties. The inclusion of the subsidiary as a named defendant in Bollinger II does not weigh against consolidation because "[c]onsolidation is not limited to actions involving identical parties . . . , but is available to different parties . . . in actions having common questions of fact and law." *Troupe v. Barbour*, No. 3:10-CV-153-HTW-MTP, 2016 U.S. Dist. LEXIS 189218, at *7 (S.D. Miss. Dec. 6, 2016) (consolidating cases with common but not identical parties) (quoting *Attala Hydratane Gas, Inc.*, 41 F.R.D. at 165).

prescription medication. Bollinger refused to employ each Charging Party based on its determination that he or she took a prohibited medication as defined in its Medication Disclosure Policy. Bollinger never confirmed whether any Charging Party actually experienced any side effects from their medication that rendered him or her unable to safely perform the relevant job. The same Bollinger Human Resources personnel were involved in the decision to terminate Ms. Senseney's employment and rescind job offers to the other five Charging Parties based on their use of prescription medication. Bollinger's consent to consolidate discovery indicates its tacit agreement that the actions share common facts and key witnesses.

### D. Consolidation Will Avoid Confusion, Prejudice, and Possible Inconsistent Adjudications.

No prejudice or confusion will result from consolidating the cases because, as discussed above, the legal questions are the same and many key facts and witnesses will overlap. Bollinger excluded each Charging Party from work based on its application of the same discriminatory policy following their examinations at the same third-party medical clinic, OHC. Bollinger denied employment to three of the Charging Parties because they took the same medication to treat opioid dependency, and it denied employment to the other three for taking similar medications to treat joint pain. At bottom, Bollinger's treatment of each Charging Party raises the same question—did the company violate the ADA by excluding individuals who use certain prescription medications to treat their disabilities from jobs it deemed safety sensitive?

Litigating the actions separately would risk inconsistent adjudications and confusion on common questions of law presented for resolution in dispositive motions as well as issues such as the qualification of experts, motions in limine, jury instructions, and the admissibility of evidence relevant to both suits. *See Hawkins*, 2021 U.S. Dist. LEXIS 252885, at *6 (weighing such risks of inconsistent adjudication and confusion in favor of consolidation). Absent consolidation, different

rulings on discovery disputes could result in the parties having access to a common piece of evidence or witness in only one of the two proceedings. Similarly, multiple trials could result in inconsistent factual or credibility determinations by the juries. For example, one jury might credit an expert's explanation of how maintenance therapy affects Suboxone users while the other jury discredits that explanation. Ultimately, separate proceedings could yield inconsistent relief for the Parties and the Charging Parties.

### E. Consolidation Will Conserve Judicial and Party Resources and Reduce the Time for Resolving Bollinger II.

Because Bollinger I and Bollinger II involve the same parties, identical legal questions, and common factual issues, consolidating the two actions would conserve resources and deliver efficiencies for the parties, the court, and third parties who may be called upon to testify or produce documents. Discovery in the two actions should overlap substantially, since the two suits involve common questions regarding Bollinger's Medication Review Policy, process for reviewing employee or applicants' medication disclosures, and use of third-party medical clinics. Depositions of key witnesses have not yet occurred in Bollinger I and will only need to take place once if the cases are consolidated. Similarly, the parties are in the process of briefing three discovery disputes in Bollinger I, meaning that substantial discovery and document production likely remains in Bollinger I, and rulings on those motions could inform the conduct of discovery for both matters. *See Necaise v. May*, No. 1:22-cv-100-LG-RPM, 2023 U.S. Dist. LEXIS 11633, at *5 (S.D. Miss. Jan. 24, 2023) (finding consolidation proper where "considering the cases together will enhance judicial economy and will be of benefit to the parties by minimizing overlapping discovery").

The efficiencies from consolidation would continue through post-discovery motion practice and trial. Because the cases involve identical legal questions and common facts, it would be more efficient for the parties to brief and the Court to decide shared issues through common

motions. Similarly, the same key witnesses involved in Defendant's hiring process, enforcement of the Medication Disclosure Policy, and decision to terminate or rescind employment offers, as well as the medical personnel at OHC, would only have to testify at one trial instead of two. Finally, the court would need only empanel a single jury to hear those related actions involving common facts and identical legal questions. Consolidation would thus save time and resources for both the court and parties compared to parallel prosecution of the two cases. *Hawkins*, 2021 U.S. Dist. LEXIS 252885, at *7; *see also id.* at *6 ("Considering that the Plaintiffs are represented by the same counsel and the Defendants are identical, the Court also believes that consolidation will save the parties' resources and avoid duplication of efforts. This factor weighs in favor of consolidation.").

**F. Consolidation Will Create No Unfair Advantage for the Commission.**

No unfair advantage would result from consolidation of these actions, and certainly no prejudice sufficient to outweigh the clear efficiencies. Defendants will not be prejudiced, and will instead save time and money by avoiding duplicative discovery, dispositive motion practice, and trial work. *See PEMEX Exploración y Producción v. BASF Corp.*, No. CV H-10-1997, 2011 WL 13134611, at *4 (S.D. Tex. Oct. 4, 2011) (consolidation posed no prejudice to defendants due to "many factual and legal issues common to both actions [which] mean[t] that consolidation w[ould] conserve time, money, and resources of both the court and the parties by reducing duplicate motions, discovery, hearings, and trials"). The greatest risk of prejudice lies in the risk of inconsistent adjudications against the same employer regarding the same allegedly discriminatory policy, which could result in inconsistent relief for the Parties and the Charging Parties. *See Troupe*, 2016 U.S. Dist. LEXIS 189218, at *9 ("Even if consolidation did pose a risk of prejudice or confusion, the need to avoid inconsistent rulings outweighs such risk" where both cases

demanded injunctive relief regarding the State's obligations to provide services).[5]

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Consolidate Cases should be granted.

Respectfully submitted, October 19, 2026,

s/ Trent Thompson
Wm. Trent Thompson
NY Bar No. 5232525
Trial Attorney
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, Alabama 35205
Telephone: (205) 651-7065
Fax: (205) 212-2041
Email: william.thompson@eeoc.gov

Marsha L. Rucker
PA Bar No. 90041
Regional Attorney
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, Alabama 35205
Telephone: (205) 651-7045
Fax: (205) 212-2041
Email: marsha.rucker@eeoc.gov

Benjamin G. Cain
DC Bar No. 1046636
Assistant Regional Attorney
Equal Employment Opportunity Commission
Jackson Area Office
100 West Capitol Street, Suite 338
Jackson, MS 39269
Telephone: (769) 487-6907
Fax: (601) 714-2202
Email: benjamin.g.cain@eeoc.gov

Gina Pearson

[5] The EEOC has demanded injunctive relief from both Defendants regarding their compliance with the ADA.

AL Bar No. asb-3971-h61g)
Trial Attorney
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, Alabama 35205
Telephone: (205) 651-7049
Fax: (205) 212-2041
Email: gina.pearson@eeoc.gov

Jay Kucia
MS Bar No. 106123
Trial Attorney
Equal Employment Opportunity Commission
Jackson Area Office
100 West Capitol Street, Suite 338
Jackson, MS 39269
Telephone: (205) 651-7081
Fax: (601) 714-2202
Email: jay.kucia@eeoc.gov