IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| PLAINTIFF, | ) | Civil Action No. 1:25-cv-00288-TBM-RPM |
| v. | ) | |
| BOLLINGER SHIPYARDS, LLC, | ) | |
| DEFENDANT. | ) | |

## PLAINTIFF'S REBUTTAL IN SUPPORT OF ITS MOTION TO COMPEL RESPONSE TO INTERROGATORY

As explained in the Motion and accompanying memorandum, Plaintiff's Interrogatory No. 3 properly seeks evidence directly relevant to whether Bollinger has applied its Medication Disclosure Policy consistently or disparately with respect to Ms. Senseney. (*See* ECF No. 31, at 5.) Defendant Bollinger Shipyards, LLC concedes that it maintains a Medication Disclosure Policy that applies to "all employees working within safety sensitive positions . . . when they are taking or prescribed medications (safety sensitive)" and that the Policy requires that "[a]ll disclosed medications should be documented on SAF FRM 052 Medication Disclosure Form along with the outcome that was communicated to the employee." (ECF No. 30-2.) Defendant does not dispute that it has applied this Policy to exclude Keely Senseney from work because she was working in a position that Defendant considers "safety sensitive" while taking a medication that Defendant considers "safety sensitive." Plaintiff's interrogatory therefore reasonably asks Defendant to identify the other employees Defendant has placed on leave because of their use of a prescription medication, if any. (*See* ECF No. 30-1, at 4-5.)

## I. <u>**The interrogatory is not overbroad.**</u>

This case is about whether Defendant subjected Ms. Senseney to disparate treatment disability discrimination because she takes a medication for her disability. The interrogatory properly requests information from Defendant about other employees placed on leave because of their use of a prescription medication, which is directly relevant to the claims and defenses at issue.

A plaintiff cannot be required to prosecute a disparate treatment case in a vacuum; discovery in a disparate treatment case properly involves discovery of information about potential comparators. *See Bailey v. KS Mgmt. Servs., L.L.C.*, 35 F.4th 397, 403 (5th Cir. 2022) (reversing and vacating grant of summary judgment where plaintiff "might be able to use this comparator evidence to show disparate treatment," because "refusal to permit any discovery on this issue was . . . an abuse of discretion"). And it is well settled that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). Yet, Defendant mistakenly seeks to import the "nearly identical" comparator standard applicable at trial to govern this discovery request. *See Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 n.8 (5th Cir. 1973) (faulting defendant that "failed to take account of the difference in degrees between the quantum of 'relevancy' which will support an effort to discover background information and the more demanding degree of 'relevancy' exacted by the trial Judge at the evidentiary tender"). Here, Defendant makes a similar error, confusing the Fifth Circuit's standard for evidentiary proof in place of the more permissive standard for discoverable information.

Specifically, Defendant's overbreadth argument depends on a prematurely adopting the standard that applies to the ultimate merits of a discrimination claim under *McDonnell-Douglas*.

Defendant argues that the interrogatory is overbroad "because 'comparator evidence' is only discoverable in employment discrimination cases for individuals who are similarly situated to the claimant," which Defendant contends means "the employee must be in nearly identical circumstances." (ECF No. 35, at 6 (internal quotation marks omitted).) However, under the more permissive relevancy standard that governs discovery requests, a party's discovery request need not be so narrowly targeted as to require only the production of information that will bear on the ultimate question at trial. *See Goodyear Tire & Rubber Co. v. CEVA Logistics Singapore, Ltd.*, 348 F.R.D. 54, 66 (E.D. La. 2024) ("Discovery should be allowed unless the party opposing discovery establishes that the information sought can have no possible bearing on the claim or defense of the party seeking discovery. If relevance is in doubt, a court should allow discovery.") (internal quotation marks omitted). Here, the interrogatory properly seeks information about persons who are likely to be comparators to Ms. Senseney because Bollinger similarly placed them on leave because of their use of a prescription medication.

Moreover, Defendant does not dispute that the Commission offered, in the spirit of compromise, to narrow the interrogatory to cover only employees who were working in safety-sensitive positions, like Ms. Senseney's Shipfitter position, as defined by Bollinger's own Medication Disclosure Policy. Plaintiff remains willing to negotiate a more narrow response to the interrogatory, but doing so will require some measure of cooperation from Defendant, particularly given its unique knowledge of whether and how it applies the Medication Disclosure Policies to different positions and different medications.

The opinions that Defendant marshalled for its position are not convincing. In *Dean v. Shell Pipeline Company, LP*, the court narrowed an age-discrimination plaintiff employee's request for "decades of employment information," yet still required an employer to identify other

similarly situated employees in response to four Rule 30(b)(6) deposition topics. *See* 2020 WL 2813521, *9 (M.D. La. May 29, 2020). Specifically, the *Dean* court permitted discovery over a five-year period regarding the "identity and age" of comparator employees, whether they were eligible for retirement packages, and "when and why they were separated from their employment with Shell." *Id.* at *11. In that sense, the *Dean* court permitted broader discovery than sought here, in that the instant interrogatory seeks only the identification of employees placed on leave for a single reason, their use of prescription medication.

Likewise, Defendant's reliance on *Arters v. Univision Radio Broadcasting TX, L.P.* is not persuasive. There, a court considering a discriminatory compensation claim based on commissions for radio ad sales determined that an Account Executive who sold ads for four Spanish-language radio stations was not sufficiently similarly situated to Account Executives who sold ads for an English-language radio station also owned by Defendant to mandate discovery of financial information from the English-language radio station. 2009 WL 1313285, at *1, 3-4 (N.D. Tex. May 12, 2009). Here, the interrogatory seeks information about employees in exactly the same situation as Ms. Senseney: placed on leave because of their use of a prescription medication, because Defendant considers that medication and the employee's position to be "safety sensitive."

In Defendant's last supporting case, the court did not deny but instead narrowed the plaintiff's discovery request, which, as written, sought information about workers from across six states. *See Drechsel v. Liberty Mut. Ins. Co.*, 2015 WL 6865965, at *2 (N.D. Tex. Nov. 9, 2015). The court there ordered the defendant employer to respond to the discovery request by producing personnel information about employees who were similarly situated to the plaintiff, in that their ultimate employment status "rested with" the same final decision maker. *Id.* at *4.

Here, Defendant has answered in response to another interrogatory that "the decision to place Keely Senseney on medical leave . . . was ultimately made by Bollinger General Counsel, Rachael Battaglia." (ECF No. 30-1, at 7.) To be clear, Ms. Battaglia was not Ms. Senseney's direct supervisor as a Shipfitter; Ms. Battaglia is a high-level corporate officer. Therefore, even by the logic of the *Drechsel* case cited by Defendant, "Plaintiff is entitled to discovery" about all other employees that Ms. Battaglia (or other higher-level managers outside the employee's direct chain of supervision) placed on leave because of their use of a prescription medication.

In addition, since the Motion was filed, the parties have agreed that this action should be consolidated for purposes of discovery with a related action that Plaintiff filed against Defendant. (*See* Joint Motion to Extend Deadlines, (ECF No. 40), at ¶¶ 4-7 ("Counsel have met and conferred and agree that consolidation of discovery between the two suits would be appropriate and efficient to conserve party and judicial resources.").) In that second-filed action, Plaintiff alleges that Defendant "rescinded its offers of employment to Charging Parties because they were prescribed medications related to their disability or disabilities." (*See* Complaint (ECF No. 1), Civ. Action No. 1:26-cv-00284-HSO-BWR). In effect, the second suit alleges that Defendant has continued to apply the Medication Disclosure Policy to deny employment to five other persons with disabilities because of their use of prescription medications. (*See id.*) Plaintiff alleges that Defendant applied the Medication Disclosure Policy to rescind offers of employment made to persons for the positions of Electrician-A, Accuracy Control Specialist, Material Specialist, Painter-A, and HVAC Technician. (*See* Complaint (ECF No. 1) ¶ 22, Civ. Action No. 1:26-cv-00284-HSO-BWR). Given its agreement to seek consolidated discovery, Defendant appears to consider at least these six positions (including Ms. Senseney's Shipfitter position) to be similarly situated for purposes of its decision making under the Medication Disclosure Policy.

That is not surprising, since Defendant's Medication Disclosure Policy broadly defines a "Safety Sensitive Position" as, among other things, any position "that has exposure to the production environment" or "that requires an employee to drive company owned vehicles regardless of the frequency." (ECF No. 30-2, at BOLLINGER-000052.) Defendant's agreement that the actions should be consolidated for the purposes of discovery underscores that this interrogatory seeking information regarding other similarly affected individuals is neither overbroad, disproportionate to the needs of the case, nor unduly burdensome, given the claims and defenses in dispute.

## II. <u>The interrogatory is proportional to the needs of the case.</u>

Defendant argued that the interrogatory is not proportional to the needs of the case, in part because "[t]his is a single-party employment action." (ECF No. 35, at 9.) However, this argument now rings hollow, since Defendant has now agreed that this case should be consolidated for the purposes of discovery with the second-filed action, which brings similar claims on behalf of five additional aggrieved individuals. (*See* Joint Motion to Extend Deadlines, (ECF No. 40), at ¶¶ 4-7 ("Counsel have met and conferred and agree that consolidation of discovery between the two suits would be appropriate and efficient to conserve party and judicial resources.").)

Defendant otherwise attacks the proportionality of the interrogatory through citation of *Callais v. United Rentals North America, Inc.*, a case in which the plaintiff sought the entire personnel files of potential comparators. 2018 WL 6517446, at *2 (M.D. La. Dec. 11, 2018). Here, Plaintiff's interrogatory is narrowly tailored to seeking the "name and dates of employment" for each employee that Defendant has "placed on leave because of the employee's use of a prescription medication," as well as "last known phone number and last known mailing address" for persons that Defendant no longer employs. (ECF No. 30-1, at 4-5.) To the extent

that Defendant contends its response to this interrogatory will reveal other employees' confidential medical information, Defendant may designate its answer to this interrogatory as confidential and subject to protection under the terms of the Stipulated Protective Order that Defendant negotiated and the Court entered. (*See* ECF No. 21, ¶ 4.) However, to be clear, the interrogatory does not ask Defendant to identify the prescription medication at issue for any employee it identifies. Even if the name of the prescription medication had been solicited by the interrogatory, such a narrowly tailored request differs materially from the *Callais* plaintiff's demand for the entirety of potential comparators' personnel files. The Commission's interrogatory is therefore tailored to the needs of this case and should be answered by Defendant.

**III. <u>The interrogatory is not unduly burdensome.</u>**

In the Fifth Circuit, "the party resisting discovery must show specifically how each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive." *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 991-92 (3d Cir. 1982) (internal quotation marks and ellipsis omitted)). Under this standard, "recitation of expense and burdensomeness are merely conclusory." *Id.* (quoting *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985)). Here, Defendant has made no attempt to substantiate its burden objection through the submission of competent evidence, and Defendant's burdensomeness objection is without merit.

Defendant's burden argument hinges on the unsupported assertions of counsel that "Defendant would have to review every personnel file for every employee that was employed during the more than five-year period . . . to determine whether they were ever placed on medical leave." (ECF No. 35, at 10.) However, Defendant has produced documentation in this litigation

that indicates it should be able to answer the interrogatory through electronic records, rather than requiring a manual review of "every personnel file for every employee." When Defendant placed Ms. Senseney on medical leave, Defendant processed a "Change of Status" form that declared "Medical Leave" as the "Reason for Change." (Ex. 1, Bollinger-000076.) The form reflects the "Effective Date" of the change, Ms. Senseney's "Employee #", her "Hire Date," and that her "Last Date Worked" was "4/12/2024." (*Id.*) Notably, the form indicates that it was "Input" and documents that Defendant had internally "Emailed Security, Helpdesk/IT, & Safety" about the change. (*Id.*) Accordingly, it is implausible that a manual review of "every personnel file for every employee" is Defendants' only means of identifying similar responsive leave information for other employees. Rather, the record suggests that Defendant maintains an electronic records system that it could use to identify potentially responsive information by filtering for employees who had a "Medical Leave" change with an "Effective Date" within the period covered by the interrogatory. In the light of this documentary evidence, and the absence of any evidentiary submission from Defendant substantiating its claimed burden, the Court should find that Defendant has failed to establish its burden objection. *See S.E.C. v. Brady*, 238 F.R.D. 429, 437 (N.D. Tex. 2006) ("In order to satisfy its burden, the objecting party must make a specific, detailed showing of how a request is burdensome . . . [and] [a] party asserting undue burden typically must present an affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request.'") (quoting *Waddell & Reed Financial, Inc. v. Torchmark Corp.*, 222 F.R.D. 450, 454 (D. Kan. 2004)); *see also North Shore-Long Island Jewish Health Systems, Inc. v. MultiPlan, Inc.*, 325 F.R.D. 36, 51 (E.D.N.Y. 2018) ("To the extent MultiPlan can input search parameters and produce varying configurations of this raw data, and to the extent

the data is otherwise discoverable, MultiPlan cannot avoid production without a more thorough showing that production would be unduly burdensome or costly.”).

Moreover, because the ADA requires Defendant to maintain in separate files the Medication Disclosure Forms generated by its mandated Medication Disclosure Policy, there should be no need for Defendant “to review every personnel file for every employee” (ECF No. 35, at 10.) Under the ADA, an employer “may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity.” 29 C.F.R. § 1630.14(c). However, if an employer requires such an inquiry of an employee, as Defendant does through its Medication Disclosure Policy, then “[i]nformation obtained . . . regarding the medical condition or history of any employee shall be collected and maintained on separate forms and in *separate medical files*.” 29 C.F.R. § 1630.14(c)(1) (emphasis added); *see also* 42 U.S.C. § 12112(d) (requiring that “information obtained regarding the medical condition or history . . . is collected and maintained on separate forms and in separate medical files”). Presuming that Defendant follows this provision of the ADA,[1] Defendant has failed to explain why the interrogatory would require it “to review every personnel file for every employee.” (ECF No. 35, at 10.) Rather, it stands to reason that Defendant will need only look within the “separate medical files” that it maintains and need only search those files for Medication Disclosure Forms for employees that it knows it placed on medical leave during the relevant period. Accordingly, Defendant’s claims that answering the interrogatory would require it to “review every personnel file for every

[1] If Defendant wishes to disturb this presumption, it should present competent evidence in the form of an affidavit or declaration from an individual with personal knowledge about how the company stores an employee’s confidential medical information with respect to their personnel files.

employee" appears doubtful, and Defendant has failed to establish that the interrogatory presents an undue burden.

None of the cases cited by Defendant support its position that the interrogatory here is unduly burdensome. In *Marshall v. Westinghouse Elec. Corp.*, the Fifth Circuit declined to disturb a district court's finding that an interrogatory that "encompassed some 7,500 employees in thirty-two districts and three manufacturing plants" was unduly burdensome. 576 F.2d 588, 592 (5th Cir. 1978). Here Defendant has failed to substantiate its claims of burden, beyond speculating through its counsel that it might involve "potentially thousands of personnel files." (ECF No. 35, at 12). Moreover, *Westinghouse*'s burden analysis should be read with due consideration of technological developments over the five decades since it was decided, which courts recognize have eased the burden on an employer of producing information from personnel files. *See United States ex rel. Edler v. Escambia County*, 344 F.R.D. 345,351 (N.D. Fla. 2023) ("The County, however, was unable to provide any specifics to support its burden argument. Although the County provided an affidavit . . . , the information in that affidavit is based on having individual employees review each record in the database for the requested information and does not consider whether a query can be run for the information.").

Defendant's reliance on *Hook v. Sullins & Associates, L.P.* fares no better, as the decision actually underscores Bollinger's failure to substantiate its undue burden objection. In *Hook*, the court credited testimony from the employer's owner that "to provide the names of everyone who worked at seven restaurants over a four-year period would be approximately 2,100 names" and "would take at least three to four days working full time at the computer to compile." 2010 WL 26465, at *1 (N.D. Tex. Jan. 4, 2010). Here, by contrast, Defendant has not even attempted to quantify the actual burden of responding to the Commission's interrogatory. *Cf. In re AAM*

*Holding Corp. (EEOC v. AAM Holding Corp.)*, 153 F.4th 252, 257, 263 (2d Cir. 2025) (affirming order requiring company to produce "pedigree information for their employees, including each employee's name, age, sex, race, position, dates of employment, and contact information," notwithstanding sworn "declaration . . . that complying with the subpoenas would take approximately 300 hours of work," because the employer "failed to provide any context for their claim that 300 hours of work would unduly burden their regular business operations"); *EEOC v. Ferrellgas, L.P.*, 97 F.4th 338, 350 (6th Cir. 2024) (rejecting employer's burden argument notwithstanding "represent[ation] that a search for responsive records covered by the subpoena would require between 700 and 1500 employee hours that could otherwise be spent on normal operations," because the employer "offer[ed] up no baseline against which we can compare its estimates to decide whether the burden it faces is undue"). Also, to be clear, the interrogatory does not broadly seek information about "everyone who worked" for Defendant, but rather is narrowly targeted to information about any "employee whom Bollinger has placed on leave because of the employee's use of a prescription medication" since May 1, 2021, which is presumably only a relatively small subset of Bollinger's entire workforce. For the reasons explained above, Defendant should be able to identify information about that subset of employees through its electronic database and separation of employee medical information into dedicated files.

Finally, this case is also unlike the other opinion cited by Defendant, *Gordon v. Greenville Independent School District*, in which the court denied as unduly burdensome a plaintiff's request for other "employees' personnel files, including copies of *all* teacher grievances, *all* teacher administrative leave placements, *all* teacher termination documents, and *all* legal releases signed by teachers." 2014 WL 6603420, at *2 (N.D. Tex. Nov. 20, 2014).

There, the employer specifically showed that some of the personnel files covered by the plaintiff's request "are in storage and would have to be retrieved from an offsite location." *Id.* Defendant has made no such showing of burden here, and the interrogatory at issue is more narrowly scoped because it asks only that the Defendant provide limited identifying information about "each employee whom Defendant has placed on leave because of the employee's use of a prescription medication."

Defendant has therefore failed to establish that answering the interrogatory would be unduly burdensome.

## IV. **Conclusion**

For the foregoing reasons, Bollinger should be compelled to respond completely to the Commission's interrogatory.

Respectfully submitted, October 23, 2026,

s/ Trent Thompson
Wm. Trent Thompson
NY Bar No. 5232525
Trial Attorney
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, Alabama 35205
Telephone: (205) 651-7065
Fax: (205) 212-2041
Email: william.thompson@eeoc.gov

Benjamin G. Cain
DC Bar No. 1046636
Assistant Regional Attorney
Equal Employment Opportunity Commission
Jackson Area Office
100 West Capitol Street, Suite 338
Jackson, MS 39269
Telephone: (769) 487-6907
Fax: (601) 714-2202
Email: benjamin.g.cain@eeoc.gov