IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| PLAINTIFF, | ) | Civil Action No. 1:25-cv-00288-TBM-RPM |
| v. | ) | |
| BOLLINGER SHIPYARDS, LLC, | ) | |
| DEFENDANT. | ) | |

**<u>REBUTTAL IN SUPPORT OF PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENAS DIRECTED TO NON-PARTY FORMER EMPLOYERS</u>**

Plaintiff has standing to bring the instant motion to quash and for a protective order under both Federal Rule of Civil Procedure 26(c) and Rule 45(d)(3). As the Commission demonstrated in its opening memorandum (ECF No. 29), good cause exists to issue a protective order or quash Defendant's third-party subpoenas to Ms. Senseney's former employers. Specifically, this Court should issue a protective order or quash the subpoenas because they seek irrelevant information, are facially overbroad, are disproportionate to the needs of this litigation and unduly burdensome, and violate public policy by frustrating the purpose of the ADA. For these reasons, this Court should issue a protective order barring their issuance, quash the subpoenas, or, at a minimum, modify them.

## I. <u>Plaintiff has standing to challenge Defendant's third-party subpoenas.</u>

Defendant claims that Plaintiff lacks standing to challenge its subpoenas. However, Plaintiff challenges Defendant's subpoenas under both Rule 26(c) and Rule 45(d)(3), (ECF No. 28 at 1), and each rule gives Plaintiff standing to challenge the subpoenas.

Rule 26(c) authorizes Plaintiff, as a party, to move for "an order to protect a party *or person* from annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c) (emphasis added). Courts have recognized a party's standing under Rule 26(c) to oppose a subpoena issued to a nonparty. *See Durand v. Wal-Mart Associates, Inc.*, 2009 WL 2181258, at *1 (S.D. Miss. July 22, 2009) ("[T]he motion seeks to place reasonable limits on the discovery process. Thus, although the Plaintiffs do not have standing to move to quash the subpoenas at issue, they do have standing to move for a protective order, and the court will construe the instant motion accordingly."). Indeed, the very cases Defendant relies upon to challenge Plaintiff's standing actually say much the same. *Ezell v. Parker*, 2015 WL 859033, at *2 (S.D. Miss. Feb. 27, 2015) (reasoning "that the proper avenue for opposing the subpoenas is via a motion for protective order," "treat[ing] Defendants' Motions solely as a request for protective order," and granting the relief requested); *Lizana v. State Farm Fire & Cas. Co.*, 2010 WL 145295, at *1 (S.D. Miss. Jan. 8, 2010) (ruling on the party's motion for a protective order upon "find[ing] that the proper avenue for opposing the requested documents is via a motion for protective order"). Ample case law thus establishes that a plaintiff has standing to seek a protective order in response to the issuance of a non-party subpoena.

Plaintiff also has standing to challenge the subpoenas under Rule 45. Plaintiff in this case is seeking to protect a "personal right or privilege with respect to the materials subpoenaed," *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979)—namely, Ms. Senseney's personal right and interest in the confidentiality of her past personnel records, *see Rogers v. Orleans Parish Sheriff Office*, 2025 WL 2460267, at *4 (E.D. La. Aug. 27, 2025) ("Courts, including courts in the Fifth Circuit, have held that an employee has a personal right to her employment records and therefore has standing as a party to challenge a non-party subpoena for them.") (collecting cases). In this case, because Plaintiff stands in the position of Ms. Senseney, Plaintiff can assert that right on her behalf.

*See EEOC v. Methodist Hosps. of Dallas*, No. 3:15-CV-3104-G, 2016 WL 10703743, at *2 (N.D. Tex. June 15, 2016) ("[T]he EEOC has standing to move to quash the subpoena to the extent that it is seeking to protect [the charging party's] privacy rights and, as Plaintiff, stands in her shoes in doing so.").

Even if Plaintiff did not have standing to oppose the subpoenas, which it does, the Court should exercise its own inherent authority to control "limit the frequency or extent of discovery." *See* Fed. R. Civ. P. 26(b)(2)(C) (providing that "the court must limit the frequency or extent of discovery" that it determines "is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *see also Rogers*, 2025 WL 2460267, at *5 ("Also, because the scope of discovery through a Rule 45 subpoena is governed by Rule 26(b), and the court must 'on its own' limit the frequency or extent of discovery if it determines the proposed discovery 'is outside the scope permitted by Rule 26(b)(1),' the court must quash a non-party subpoena duces tecum that is overly broad or seeks irrelevant information.") (quoting Fed. R. Civ. P. 26(b)(2)(C)) (internal footnotes and citations omitted). This independent authority supports quashing or modifying the facially overbroad subpoenas.

## II. <u>Defendant's third-party subpoenas are irrelevant, facially overbroad, disproportionate to the needs of the case, unduly burdensome, and violative of public policy.</u>

Defendant's response conspicuously omits the actual language of its facially overbroad subpoenas. The subpoenas demand production of "**ANY AND ALL** information in [the recipient's] care, custody or control concerning the hiring, the employment and/or separation of **KEELY SENSENEY** . . . ." (ECF No. 24, at 5.) The subpoenas make plain that they seek every scrap of paper the recipients may have regarding Ms. Senseney, stating:

> Such records should include any and all documents relating to the hiring, employment and/or separation of **KEELY SENSENEY**, and are not limited to the following illustrative examples: personnel file, supervisory file, disciplinary file, work

> evaluations/performance records, records related to any workplace incidents, all applications for employment, dates of service, pay raises, salary, performance appraisals, benefits, days absent/tardy, and reasons therefor, leave of absence documents, date of termination, reasons therefor, any correspondence, and any other file retained on **KEELY SENSENEY.**

*Id.*

Indeed, Defendant admits that it "does seek all of Ms. Senseney's personnel records from these two specific employers . . . ." (ECF No. 34 at 6.). Defendant contends that circumstances of this case justify such sweeping subpoenas, but its arguments fall flat. Because the subpoenas seek irrelevant information using overbroad, disproportionate, and unduly burdensome language, this Court has good cause to forbid their issuance.

A. <u>This Court should enter a protective order because the information the subpoenas seek from third parties is irrelevant.</u>

The information Defendant intends to seek from Ms. Senseney's prior employers is not relevant to the claims and defenses in dispute in this action. "Rule 26(b) has never been a license to engage in an unwieldy, burdensome, and speculative fishing expedition." *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (internal quotation omitted). But Defendant seeks just such a license for the fishing expedition proposed by its non-party subpoenas. Because Defendant cannot justify them with anything more than "theoretical possibilities of relevance," this Court should issue a protective order preventing their issuance. *Reed v. Madison County, Miss.*, 2016 WL 11640189, at *2 (S.D. Miss. Nov. 1, 2016).

Defendant's first claim for relevance is that the records relate to Ms. Senseney's qualifications. Indeed, Defendant goes so far as to say that it cannot "possibly confirm whether [Ms. Senseney] was qualified for the role of Shipfitter" based on the time Ms. Senseney worked for Defendant as a Shipfitter and instead must have access to prior employers' files to judge her qualifications. However, as this Court has recognized, an employer cannot demand "[w]holesale

production of Plaintiff's personnel records based on theoretical possibilities of relevance" when the employer "fails to suggest any reason for suspecting that Plaintiff might have lacked qualifications for a position she held" for some time without apparent issue. *Reed*, 2016 WL 11640189, at *2. Defendant emphasizes that it excluded Ms. Senseney from the workplace after only a few months, whereas the *Reed* plaintiff had worked in her position for a few years, but that is a distinction without any significant difference. Here, Defendant does not dispute that it subjected Ms. Senseney to a "craft test" for the Shipfitter position before hiring her, (*see* ECF No. 29, at 2), as well as multiple post-offer medical examinations to judge her qualifications to perform the essential functions of the job, which makes its need for records from former employers even less convincing. Nor does Defendant offer any evidence that it ever experienced any issues with or concerns about Ms. Senseney's job performance during the time she worked for Defendant performing the job functions of a Shipfitter. In this context, Defendant's reliance on purportedly now needing to re-test Ms. Senseney's qualifications to work as a Shipfitter is not convincing and cannot justify its demand for the entirety of her personnel records from former employers.

Also, to the extent Defendant seeks to justify its subpoenas using its direct threat argument, it is wrong on the law. The direct threat defense considers what Defendant knew at the time it made the employment decision at issue. *See Butler v. Louisiana Dep't of Pub. Safety & Corr.*, No. 3:12-cv-00420-BAJ, 2013 WL 2407567, at *7 (M.D. La. May 29, 2013) (denying defendants' motion to compel medical information because "[t]he medical records that Defendants . . . wish[ed] to obtain were obviously unknown to Defendants at the time when they allege[d] Plaintiff posed a direct threat," which meant that "the records 'could not have motivated the employer's decision and [were] not evidence that tend[ed] to illuminate the ultimate issue,' and by extension, [were] not at issue in th[e] litigation.") (quoting *Patrick v. Ridge*, 394 F.3d 311, 319 (5th Cir. 2004)). Any

information Defendant seeks to obtain for the first time now could not have been the basis for its decision to place Ms. Senseney on leave. The possibility of a direct threat defense does not establish the relevance of the records in question.

Defendant also claims that the records are relevant "to the extent that they contain any information related to Ms. Senseney's disability." (ECF No. 34 at 11.) But Defendant cannot substantiate its subpoenas to former employers by arguing that they might happen to have information about Ms. Senseney's medical history. Defendant subjected Ms. Senseney to at least three medical examinations relevant to her disability, and Ms. Senseney has authorized the release of those records, as well as the release of nearly eight years of medical records from her primary physician. (*See* ECF No. 37, at 10.) Considering the information about Ms. Senseney's disability to which Defendant already has access, the purported need to find medical information within the personnel files of Ms. Senseney's personnel records is weak justification for the broadly scoped subpoenas at issue here. *See* Fed. R. Civ. P. 26(b)(2)(C) (directing that a "court must limit the frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive.").

Finally, Defendant argues that its subpoenas are relevant because Ms. Senseney's "emotional distress *could* have been caused by other things." (ECF No. 34 at 11 (emphasis added).) That baseless speculation is not sufficient to justify the subpoenas' demands for the entirety of Ms. Senseney's personnel files at both prior employers, since most of a personnel file will have no relation whatsoever to emotional distress. Defendant appears to be hoping to find in the prior employers' records some indication that one of the prior employers terminated Ms. Senseney in a fashion that could have caused her emotional distress. But no evidence in the records supports such

a suggestion. Rather, the evidence indicates that Ms. Senseney was still working for Huntington Ingalls when she applied to work for Defendant in January 2024 and that she had last worked for Floor Industrial Contractors in September 2021. (*See* ECF No. 34-4.) Under these circumstances, Defendant "has submitted no evidence to suggest that the employment records sought are likely to produce any information probative of emotional distress." *Erwin v. OBI Seafoods LLC*, 2023 WL 4457153, at *3 & n.2 (W.D. Wash. July 11, 2023) ("The mere possibility that employment records *might* contain such information is insufficient given the sensitive nature of such records."). Moreover, because the subpoenas would reach personnel records dating back to when Ms. Senseney started working for Floore Industrial in January 2019, "Defendant's contention that such dated information . . . 'may' demonstrate an alternative source of emotional distress inches over the line into a 'fishing expedition' barred by the applicable rules." *Reed*, 2016 WL 11640189, at *4.

B. <u>This Court should issue a protective order because the subpoenas' language is facially overbroad.</u>

Even if this Court finds that some of the records Defendant seeks are relevant, the unbounded subpoenas that Defendant seeks to issue are inappropriate. Defendant's subpoenas seek every scrap of paper or data entry that either of the third parties has "on Keely Senseney." In Defendant's own phrasing, Defendant insists on any

> personnel file, supervisory file, disciplinary file, work evaluations/performance records, records related to any workplace incidents, all applications for employment, dates of service, pay raises, salary, performance appraisals, benefits, days absent/tardy, and reasons therefor, leave of absence documents, date of termination, reasons therefor, any correspondence, and any other file retained on **KEELY SENSENEY**.

Because "Defendant has made no attempt to limit the scope of each subpoena to [relevant] documents, or to otherwise tailor each subpoena to each employer to prevent requesting irrelevant information," the Court should decline to do that work for Defendant and instead quash the

subpoenas in their entirety as overbroad. *See Paxton v. Landesk Software, Inc.*, 332 F.R.D. 368, 369 (M.D. Fla. 2019).

C. Defendant's third-party subpoenas are disproportionate to the needs of the case and unduly burdensome.

Defendant merely claims that its subpoenas are "proportional to the needs of the case." (ECF No. 34 at 12.) This ignores the fact that Defendant already has access to information on topics it claims justify the subpoena, such as Ms. Senseney's health records. Since before this litigation began, Defendant has had access to the medical information it obtained during its multiple physical examinations of Ms. Senseney. Further, on October 2, 2026, Plaintiff produced HIPAA authorizations to Defendant allowing Defendant to access records from 2019 to the present from Ms. Senseney's primary care physician, who has been her only prescriber during the relevant period for the medication she take for opioid dependency, as well as records from the medical examiners Defendant used to examine her in 2024. (ECF No. 36-4). Nonetheless, Defendant claimed in its opposition of October 16, 2026, that "the EEOC has refused to produce HIPAA authorizations signed by Ms. Senseney that would allow Defendant to discover" information about Ms. Senseney's disability. (ECF No. 34 at 9.) This is simply not true.

Contrary to Defendant's assertion, Plaintiff can further challenge the subpoenas because of the undue burden they would place on the third parties. *See Hoeflein v. Crescent Drilling and Production, Inc.*, 2020 WL 7643122, at *3-4 (W.D. Tex. Dec. 23, 2020) (weighing the undue burden to third-party former employers of producing emails, text messages, and other correspondence in favor of plaintiffs' motion for a protective order shielding employers from such portions of third-party subpoenas). Defendant wants to demand that these third parties do much more than produce Ms. Senseney's personnel files. Defendant wishes to require these companies search for "all communications" and any piece of paper, correspondence, or scrap of data that they

have that might relate to Ms. Senseney in any way whatsoever. Moreover, the burden of the subpoenas will not be limited to the third parties, if their issuance results in Defendant receiving and attempting to use irrelevant yet potentially prejudicial material, which will result in motion practice about admissibility. The burdens of compliance with the subpoena are undue and not proportional to the needs of the case.

D. The subpoenas are contrary to the public interest.

The subpoenas proposed by Defendant are contrary to the public interest because they are facially overbroad and seek to expose the entirety of Ms. Senseney's personnel files at two prior employers, without Defendant having made sufficient effort to tailor the information requested from each former employer to the claims and defenses at issue in this case. The EEOC does not take the position that it is contrary to public policy to permit a defendant-employer to issue targeted subpoenas to an aggrieved individual's former employer for a limited subset of materials that are relevant to the claims and issues in dispute. However, the EEOC continues to object to Defendant's proposal to drag a net through the entirety of Ms. Senseney's employment history with these former employers, because permitting defendant-employers to mount such unbounded fishing expeditions through aggrieved individuals' past lives would have an undue chilling effect on the EEOC's ability to enforce the nation's employment discrimination statutes.

The Supreme Court acknowledged in *McKennon v. Nashville Banner Pub. Co.* that "[t]he concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist [employment discrimination] claims is not an insubstantial one." 513 U.S. 352, 363 (1995). However, the Supreme Court trusted that "the authority of the courts to award attorney's fees . . . and to invoke the appropriate provisions of the Federal Rules of Civil Procedure will deter most abuses." *Id.* Indeed, "*McKennon* authorizes district courts to invoke the Federal Rules of Civil Procedure when necessary to prevent employers

from using the discovery process to engage in wholesale searches for evidence." *Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1072 (9th Cir. 2004). In light of Defendant's refusal to narrow the facially overbroad subpoenas it proposes to issue to Ms. Senseney's former employers, which must be considered alongside its contemporaneous insistence on maintaining the "full scope of its request" for "the name and address of each and every . . . health care provider, psychologist, psychiatrist, counselor or clergy member . . . by whom the Charging Party was treated, examined, or counseled" at any time in at least the last 12 years, (*see* ECF No 37, at 7-8), this Court should exercise its authority under *McKennon* and the Federal Rules of Civil Procedure to quash or modify the non-party subpoenas in accordance with the public interest.

## III. Conclusion

For these reasons, this Court should issue a protective order or quash Defendant's third-party subpoenas. Doing so will ensure that discovery in this case remains relevant, reasonable, and efficient and will protect the privacy interests of Ms. Senseney. Alternatively, this Court should modify Defendant's third-party subpoenas such that they only seek relevant information proportionate to the needs of this case.

Respectfully submitted, October 23, 2026,

s/ Trent Thompson
Wm. Trent Thompson
NY Bar No. 5232525
Trial Attorney
Equal Employment Opportunity Commission
Birmingham District Office
1130 22nd Street South, Suite 2000
Birmingham, Alabama 35205
Telephone: (205) 651-7065
Fax: (205) 212-2041
Email: william.thompson@eeoc.gov

Benjamin G. Cain
DC Bar No. 1046636
Assistant Regional Attorney

Equal Employment Opportunity Commission
Jackson Area Office
100 West Capitol Street, Suite 338
Jackson, MS 39269
Telephone: (769) 487-6907
Fax: (601) 714-2202
Email: benjamin.g.cain@eeoc.gov

Jay Kucia
MS Bar No. 106123
Attorney for Plaintiff
Equal Employment Opportunity Commission
Jackson Area Office
Dr. A. H. McCoy Federal Building
100 West Capitol Street, Suite 338
Jackson, Mississippi 39269
(769) 487-6906
jay.kucia@eeoc.gov